Caesar **HARMASON,**
**Petitioner–Appellant,**

v.

Larry **SMITH,** Acting Warden, Louisiana State Penitentiary, Et Al.,
**Respondents–Appellees.**

No. 88–3431
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1989.

---

**6.** In addition, we leave to the district court the issues raised below but not reached in its prior ruling.

Caesar Harmason, Angola, La., pro se.

Janis L. Kile, Asst. Dist. Atty. and William J. Guste, Jr., Atty. Gen., Baton Rouge, La., for respondents-appellees.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge.

Petitioner-appellant Caesar Harmason (Harmason) appeals the order of the district court denying his application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He maintains that his plea of guilty in state court to two armed robberies was involuntary and unknowing because it was predicated on a statement by his attorney that led him to believe his sentence would be no more than fifteen years, when in fact he received an eighteen-year sentence. We affirm.

### Facts and Proceedings Below

On March 22, 1983, Harmason pleaded guilty in Louisiana state court to two counts of armed robbery committed in March 1982. On June 15, 1983, the court, following receipt of the presentence investigation report from the probation department, sentenced Harmason to eighteen years' imprisonment on each count, with the terms to run concurrently. Harmason appealed the conviction and sentence to the Louisiana Court of Appeal for the First Circuit, contending that the sentence was excessive and that the plea was unknowing and involuntary because his attorney gave him to understand that the sentence following a guilty plea would be no more than fifteen years' imprisonment. That court affirmed the trial court, finding that it had not abused its discretion in sentencing Harmason and that Harmason had tendered no showing that "a clear and definite promise had been given." *State v. Harmason*, No. 83 KA 0930 (La.Ct.App. 1st Cir. Apr. 3, 1984). The Louisiana Supreme Court denied his application for writ of certiorari, *State v. Harmason*, 450 So.2d 965 (La. 1984), and later rejected his reapplication for writ of certiorari as well as his applica-

tion for writs of habeas corpus and mandamus. *State ex rel. Harmason v. Blackburn*, 512 So.2d 858–59 (La.1987).

After exhausting his state court remedies, Harmason filed an application for writ of habeas corpus *in forma pauperis*, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Middle District of Louisiana, essentially raising the same grounds for relief as he did in the state courts. On April 27, 1988, the district court, acting upon the recommendation of the magistrate, denied Harmason's application. The court reasoned that because the alleged representation by Harmason's attorney of a fifteen-year sentence following a guilty plea was contingent on the favorable findings of the presentence report, it could not have been breached as a result of the imposition of an eighteen-year sentence, for the report indicated that Harmason's past offenses had been severe. *Harmason v. Butler*, No. 88–69–A (M.D.La. May 4, 1988). This appeal followed.

### Discussion

■ On appeal, Harmason seeks a reversal of the denial of his application for writ of habeas corpus or, in the alternative, an evidentiary hearing to determine whether his attorney made a promise to him that was unkept about the sentence Harmason would receive following a guilty plea. As Harmason notes, for a guilty plea to be constitutionally valid, it must be voluntary and knowing. *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir.1986). However, his "mere 'understanding'" that he would receive a lesser sentence in exchange for a guilty plea will not abrogate that plea should a heavier sentence actually be imposed. *See Davis v. Butler*, 825 F.2d 892, 894 (5th Cir.1987); *Smith*, 786 F.2d at 701; *Self v. Blackburn*, 751 F.2d 789, 792–93 (5th Cir.1985); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir.1981), *cert. denied*, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982).

■ In order for a prisoner to receive federal habeas relief on the basis of alleged promises that are inconsistent with representations made in open court when his

guilty plea was accepted, he must "'prove (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.'" *Davis*, 825 F.2d at 894 (quoting *Smith*, 786 F.2d at 701). For Harmason to prevail on his request for an evidentiary hearing, he must present the court with "'independent indicia of the likely merit of [his] contentions....'" *Davis*, 825 F.2d at 894 (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986)). Such indicia may include an affidavit from a reliable third party. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir.1985).

■ As support for his contention that his plea was involuntary and unknowing, Harmason proffered a copy of the October 14, 1983 affidavit of his attorney, Leo J. Berggreen (Berggreen), which had been filed in the Louisiana Court of Appeal in aid of Harmason's appeal. This affidavit recites that the case had been set for trial on the merits for March 21, 1983, when the jury was selected, and that the following morning, before trial commenced that day, there was an in-chambers, unrecorded conference between the judge, the Honorable Carl J. Guidry, the prosecutor (Mr. Roy), counsel for co-defendant Davis (Mr. Smith), and Berggreen. A third co-defendant, Taylor, had previously pleaded guilty and been sentenced to fifteen years. The affidavit further states that at this conference there took place "a conversation with words of similar import" that the affidavit purports to paraphrase in the following language:

"Mr. Berggreen: 'If we enter a plea on behalf of our respective clients what kind of time are we looking at?'

"Mr. Roy: 'I don't think it will make any difference if you plead to two or three counts. The sentence should be the same.'

"Judge Guidry: 'I gave the other defendant, Tyrone Taylor, fifteen years and that was after a full blown trial.'

"Mr. Smith: 'We are looking at something less than fifteen?'

"Judge Guidry: 'I have to have a pre-sentence report on both of them first. But I think that's right.'

"Mr. Roy: 'I will accept a plea on two counts from Harmason and three counts from Davis.'

"Mr. Berggreen: 'Can we tell our clients that they can expect less than fifteen years?'

"Mr. Roy: 'The Court usually considers the fact that a plea was made.'

"Mr. Smith: 'What can we tell our clients?'

"Judge Guidry: 'Unless the pre-sentence is extraordinarily bad, I think what I gave Taylor is the outside limit.'

"Based upon this conversation, affiant talked to his client and convinced him that less than fifteen (15) years as compared to ninety-nine (99) years on each count was a good plea bargain."

In his brief on direct appeal to the Louisiana Court of Appeal, Harmason's counsel asserted that "Harmason agreed to plead guilty based upon counsel's representations that he was going to probably receive less than fifteen years."

Following the conference, a lengthy hearing (some twenty pages of the transcript) was held in open court with reference to the knowing and voluntary nature of the pleas, and the factual basis for them, and the pleas were accepted. Among other things, the record of this hearing reflects the following:

"Q [Judge Guidry]. And you understand your exposure as far as the penalty is concerned? You're looking at a minimum of five years without benefit of probation, parole or suspension of sentence. You understand that?

"A [Harmason]. Yes, sir.

"Q. And a maximum of ninety-nine and as to each count; count two and count three?

"A. Yes, sir.

". . . .

"Q. All right. Is this a free and voluntary plea on your part?

"A. Yes, sir.

"Q. Is anyone forcing, threatening or coercing you to plead guilty?

"A. No, sir.

"The Court: Is this a negotiated plea of any type?

"Mr. Roy: No, sir.

"Mr. Berggreen: Not with Mr. Roy, Your Honor. Uh, I led my client to believe there were certain perimeters as far as what would probably be the sentence but I mean there's no deal with anybody as to specific sentence.

"By the Court:

"Q. Well, have any promises been made to you to plead guilty, Mr.—

"A. No, sir, no promises.

"Q. All right. And you—you understand the minimum is five and the maximum is ninety-nine—

"A. Yes, sir.

"Q. —without benefit of parole, probation or suspension of sentence?

"A. Yes, sir."[1]

After the guilty pleas were accepted, the trial court ordered a presentence investigation report, and, following its receipt, the sentencing hearing was held on June 15, 1983. At the sentencing, Judge Guidry questioned Harmason about the fact that the "pre-sentence investigation" reflected he had been arrested as a juvenile in October 1978 for two counts of burglary and theft for which he was "placed on supervised probation," that while on probation he was arrested for trespassing and disturbing the peace and thereafter was again

---

1. We note that in the course of the judge's thorough explanation of the rights Harmason would be giving up by pleading guilty, when mention was made of the right to appeal, Harmason's counsel interjected stating "because its been one of my client's concerns, I would want to assure him that he would retain the right to appeal what he might feel would be an excessive sentence," and the court agreed that this was so.

Further, at the joint hearing on Smith's and Harmason's pleas (both being present throughout), the charges and their legal and factual elements were clearly explained and the underlying facts and evidence showing Harmason's guilt were recited and the court ascertained from Harmason that that was what he was pleading guilty to.

arrested for burglary and theft in April of 1979 and in May of 1979 was committed for those offenses until June 1980, after which he was on probation until November 1980. Harmason and his counsel denied none of this, and his counsel remarked "the bad company was his ruin. I'm not saying he did not commit the acts." When the court imposed sentence, counsel advised that "for the record I would like to enter an oral order of appeal with regard to the sentence" but "[n]ot with regard to the Boykin."[2] Subsequently, as above recited, Harmason, through counsel, unsuccessfully appealed both the severity of his sentence and his guilty plea to the Louisiana Court of Appeal.

We reject Harmason's contentions. His sworn testimony at the guilty plea hearing was that he understood that his sentence "exposure" was up to ninety-nine years, and that there had been, in his own words, "no promises." The latter statement was in response to the court's questions posed immediately following Harmason's counsel's statement that "I led my client to believe there were certain perimeters as far as what would *probably* be the sentence but I mean there's no deal with anybody as to specific sentence." (Emphasis added). Counsel's affidavit insofar as it relates what the judge said at the chambers conference shows these comments to be in each instance both less than firm—"I think"—and conditional, *viz:* "I have to have a pre-sentence report ... first" and "unless the pre-sentence is extraordinarily bad." This is also reflected in counsel's state appeal brief, where it is stated that he informed Harmason that he would *"probably"* receive less than fifteen years. That the possibility of a greater sentence was in mind is likewise reflected by the express reservation of the right to appeal the sentence (*see* note 1, *supra*). Harmason's instant habeas petition likewise reflects that he understood at the time that whether his

sentence would exceed fifteen years depended on how the judge would evaluate his record. The petition refers to counsel's affidavit as stating "that Judge Guidry said the imposition of sentences of less than fifteen (15) years would hinge upon whether the pre-sentence investigation report was *'bad.'*" (Emphasis in original). The petition goes on to state: "Of course, what is 'bad' or good is a *value judgment*.... To petitioner* and counsel, the presentence investigation report, reflecting utterly petty offenses, was not considered 'bad' *and thus, petitioner felt* that he would be entitled to a sentence of less than fifteen (15) years imprisonment." (Emphasis added). This bespeaks Harmason's recognition that he might get more than fifteen years if the trial court viewed his record as being more serious than he did, a matter that he recognizes was a value judgment. Similarly, in his brief on this appeal Harmason states that the issue is whether his guilty plea was rendered invalid because based on "the stipulation that Appellant would *more than likely* receive the same sentence as his co-defendant [Taylor]" (emphasis added) and further that he relied on "the *prognosis* related to him by his attorney" (emphasis added).

■ Harmason's allegations, Berggreen's affidavit, and the circumstances of his case do not indicate his reliance on a specific, firm sentencing agreement or representation, but rather demonstrate no more than an understanding on Harmason's part that his sentence would probably be no more than fifteen years, but that this was not certain and was contingent on the judge's evaluation of the forthcoming presentence report. We cannot say that Harmason's guilty plea was involuntary and unknowing and that the issuance of a writ of habeas corpus should therefore follow. *See Smith,* 786 F.2d at 701 ("under-

---

**2.** In his brief to the Louisiana Court of Appeal, Harmason's counsel asserted that after sentencing:

"Counsel then approached the bench and reminded the court of the conversation in chambers on the day (March 22, 1983) of the plea of guilty. The court did not recall the

conversation and stuck by its sentence of eighteen years. The court did afterward speak to Ralph Roy, James Garland Smith and Leo Berggreen and based upon these conversations did not conclude that any agreement or promise had been made."

standing" there would be a lesser sentence will not undermine the voluntariness of a guilty plea; rather, there must be an "actual promise"); *Self,* 751 F.2d at 793 (same). Berggreen's affidavit does *not* state that he told Harmason that the judge (or anyone else) promised to give no more than fifteen years. In light of counsel's statement in open court, and in his brief on appeal (which was based on the affidavit), that he advised Harmason as to what would *"probably"* be his sentence, and in light also of the affidavit's reference to the judge's "I think" and "unless the pre-sentence" statements in conference, we are unable to read into Berggreen's affidavit any assertion that he conveyed to Harmason a definite and firm assurance, as opposed to a prediction or statement of probability, that his sentence would not exceed fifteen years. A prediction, prognosis, or statement of probabilities, such as a prosecutor's leading the defendant to believe that defense counsel's statement of the "probable duration of sentence" was "accurate," *Self,* 751 F.2d at 793, does not constitute an "actual promise" within *Smith,* 786 F.2d at 701. Further, if there were any actual promise here, as opposed to a mere statement of probabilities, "exactly what the terms of the alleged promise were," *id.,* is not stated. As a result, Harmason's allegations and Berggreen's affidavit fail to surmount the " 'formidable barrier' " presented by Harmason's own open court assertions that there had been "no promises" about his sentence and that he understood that his sentence "exposure" was the statutory maximum. Therefore the granting of an evidentiary hearing was not required. *See Davis,* 825 F.2d at 894–95; *Raetzsch,* 781 F.2d at 1152 (defendant not entitled to evidentiary hearing when allegations are inconsistent with his conduct).

### Conclusion

In conclusion, we find that Harmason has failed to establish that his guilty plea was involuntary or unknowing and therefore has not satisfied the requirements for the issuance of a writ of habeas corpus. We also find that Harmason has not demonstrated the need for an evidentiary hearing. Therefore, the denial of his petition for writ of habeas corpus is AFFIRMED.