## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2016-CP-00704-COA

**ROBERT ALLEN WORTH A/K/A ROBERT A. WORTH A/K/A BOB WORTH**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:           01/21/2016
TRIAL JUDGE:                HON. CHRISTOPHER LOUIS SCHMIDT
COURT FROM WHICH APPEALED:  HARRISON COUNTY CIRCUIT COURT,
                            SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:     ROBERT ALLEN WORTH (PRO SE)
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ALICIA AINSWORTH
NATURE OF THE CASE:         CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:    PETITION FOR POST-CONVICTION
                            RELIEF DENIED
DISPOSITION:                AFFIRMED - 07/25/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.    Robert Allen Worth pled guilty to exploitation of a child and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended, ten years to serve, and five years of post-release supervision.

¶2.    Worth subsequently filed a petition for post-conviction relief (PCR), claiming (1) that he received ineffective assistance of counsel, which led to an involuntary plea; (2) that his sexually explicit emails, in which he sought to arrange a sexual encounter with a thirteen-year-old girl, were protected speech under the First Amendment; (3) that the prosecutor and

his attorney both engaged in "misconduct"; and (4) that because no Viagra pills were found in his possession at the time of his arrest, he lacked the ability and/or the intent to have sexual intercourse "with anyone much less a minor." The circuit court denied Worth's PCR petition as meritless, and we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     On March 8, 2012, Sergeant Donnie Dobbs of the Biloxi Police Department signed on to a chatroom on America Online (AOL) named "ShareHerNMississippi13" to monitor for sexual predators. Sergeant Dobbs used the screen name "DnS4young1313" and represented himself as "Denise," a thirty-five-year-old single mother who lived in Biloxi and had a thirteen-year-old daughter named "Brandi." Sergeant Dobbs soon received an instant message from someone using the screen name "ActivetongueLINY," who said that his name was Bob and that he lived in New York. Sergeant Dobbs initially ignored Bob's messages since Bob did not live near Mississippi, but Bob persisted in messaging "Denise." Bob told "Denise" that he was familiar with the Biloxi area because he had trained at Keesler Air Force Base and that he would be going back to the base in April 2012.

¶4.     Bob's initial message to "Denise" indicated that he wanted to have sex with her thirteen-year-old daughter "Brandi." This led to numerous vulgar, disturbing, and sexually explicit emails between March 8, 2012, and April 20, 2012, in which Bob expressed his desire to have sex with "Brandi" and made plans to meet "Denise" and "Brandi" in order to have sex with "Brandi."

¶5.     To prove that he was serious about meeting "Denise," Bob provided his telephone

2

number. Sergeant Dobbs asked a female detective to pose as "Denise" on a telephone call to Bob. On March 25, the female detective, posing as "Denise," called the number Bob provided and made contact with him. He continued to express his desire to travel to Biloxi to meet and have sex with "Brandi." After the phone call, Sergeant Dobbs continued to email Bob in order to make plans for him to come to Biloxi.

¶6.     Sergeant Dobbs also used the telephone number to identify Bob as Robert Allen Worth of Indianapolis, Indiana. The identification was supported by information included in Bob's emails, including his request that "Denise" and "Brandi" travel to Indianapolis to visit him. Finally, by email, "Denise" asked Bob for his last name, and Bob said that his last name was Worth.

¶7.     On March 28, 2012, Worth told "Denise" that he had purchased a digital camera to take pictures of "Brandi" and a GPS to help him travel to Biloxi. He also told "Denise" that he would bring vibrators, lubricant, and condoms for his planned intercourse with "Brandi." Worth and "Denise" later arranged to meet at the Biloxi Lighthouse Pier between 3:00 and 3:30 p.m. on April 20, 2012.

¶8.     On April 20, 2012, after receiving email updates from Worth about his estimated time of arrival, law enforcement set up surveillance near the pier. Around 2:30 p.m., Worth arrived at the pier and was arrested. Condoms, a GPS, a digital camera, lubricant, and vibrators were found in Worth's car. After Worth was arrested and informed of his rights, he admitted that he believed that he had been communicating with a mother in Biloxi about her thirteen-year-old daughter, but he claimed that he had traveled to Biloxi to help the

3

mother educate her daughter about safe sex practices.

¶9. Worth was indicted for exploitation of a child. *See* Miss. Code Ann. § 97-5-33(6). (Rev. 2014). On September 15, 2014, Worth filed a petition to plead guilty to the charge. Worth's plea petition acknowledged that he faced a minimum sentence of five years and a $50,000 fine and a maximum sentence of forty years and a $500,000 fine. The petition also acknowledged that Worth would enter an open plea, meaning that the State had not made a sentencing recommendation and that there was no plea agreement between Worth and the State. Worth's sworn petition also provided the following factual basis for his plea:

> Between March 8, 2012 and April 20, 2012 I sent electronic messages by cell phone & computer to entice a child under 18 years for the purpose of meeting to engage in sexually explicit conduct. I contacted a law enforcement officer passing as the child's mother. The cell phone & computer messages were received in the Second Judicial District of Harrison Co., Miss. and I traveled to Biloxi for the meeting & was arrested there.

¶10. A plea hearing was held the same day that Worth submitted his plea petition. At the hearing, Worth told the circuit judge that he had read and understood the contents of his plea petition and that he had discussed the petition fully with his attorney. Worth's attorney also informed the court that he and Worth had engaged in a "lengthy discussion" prior to the hearing. Worth again swore that everything in the petition was true and correct. Worth told the court he was satisfied with his attorney's services and that his attorney had explained the crime and the sentencing range to him. The circuit judge explained the rights that Worth was waiving by pleading guilty, and Worth stated that he understood and desired to plead guilty. Worth swore he was not coerced or forced into pleading guilty, nor had he been promised or guaranteed any specific sentence. The circuit judge told Worth that he had no obligation to

4

follow any recommendation by the State and could sentence him to the maximum of forty years or the minimum of five. Worth said he understood. The court then accepted Worth's plea and postponed sentencing until the completion of a pre-sentence report.

¶11. Worth was sentenced on November 17, 2014. The State recommended a sentence of five to ten years to serve and five years of post-release supervision. Worth's attorney requested a sentence of time served. The judge then allowed Worth to speak. Worth claimed that he had never touched a child and would never do so. He claimed that he communicated with "Denise" only to help a child who appeared to be in trouble. He emphasized that he never communicated with a child or even an officer posing as a child. He admitted sending sexually explicit emails about having sex with a thirteen-year-old girl, but he claimed that he was only following the lead of the officer posing as "Denise." After listening to Worth, the judge sentenced him to fifteen years in MDOC custody, with five years suspended and ten to serve, as well as five years of post-release supervision. Worth was fifty-seven years old at the time of his sentencing.

¶12. On December 28, 2015, Worth filed a pro se PCR petition. In his first claim, Worth alleged that his plea was involuntary because his attorney misled him about the minimum sentence and told him that he would be sentenced to "time served." Worth also claimed that his attorney coerced him into pleading guilty by promising that he would be "home for the holidays" if he pled. Worth also alleged that his attorney failed to inform him of the full consequences of pleading guilty, including an alleged loss of Social Security benefits. Finally, Worth alleged other miscellaneous failures by his attorney, such as failing to obtain

5

discovery and failing to discuss trial strategy and defenses.

¶13. Worth's PCR petition also alleged that his sexually explicit email communications were protected by the First Amendment because they were sent to a "consenting adult." Worth also claimed that he had a "medical" defense to the charges against him: he had a prescription for Viagra, and because no Viagra was found in his possession when he was arrested, he lacked the intent or ability to have sex with "Brandi." Finally, Worth alleged miscellaneous "misconduct" by the State and his own attorney.

¶14. In his order denying Worth's petition for post-conviction relief, the circuit judge found that Worth's plea was voluntarily and intelligently entered and that Worth had fully understood the consequences of his plea at the time of his plea hearing. The circuit judge also noted that at the time Worth pled guilty, he did not report any dissatisfaction with his attorney's performance, and the judge found that nothing in the record supported Worth's claim that the actions or inactions of his attorney resulted in an involuntary plea. Finally, the judge ruled that Worth's First Amendment claim, "medical" defense, and various allegations of "misconduct" were all without merit. Worth filed a timely notice of appeal.

**ANALYSIS**

¶15. We review a circuit judge's denial of a PCR petition for clear error and will not disturb his factual findings absent such error. *Wrenn v. State*, 207 So. 3d 1252, 1256 (¶13) (Miss. Ct. App. 2017) (citing *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999)). However, we review his conclusions on questions of law de novo. *Id.* The circuit court may summarily dismiss a PCR petition if it is plain from the face of the petition, any exhibits, and

6

prior proceedings that the petitioner is not entitled to relief. *Thomas v. State*, 159 So. 3d 1212, 1214 (¶4) (Miss. Ct. App. 2015); Miss. Code Ann. § 99-39-11(2) (Rev. 2015). Dismissal is proper where the petitioner can prove no set of facts in support of his claim that would entitle him to relief. *Thomas*, 159 So. 3d at 1214 (¶4). The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief. Miss. Code Ann. § 99-39-23(7) (Rev. 2015).

## I.    Ineffective Assistance/Involuntary Plea

¶16.    Worth claims that he received ineffective assistance of counsel, which caused him to enter an involuntary plea. Specifically, Worth claims that his attorney failed to secure discovery from the State, failed to inform him of the true minimum and maximum sentences for his crime and further misled him about his sentence, failed to contact witnesses, and failed to discuss trial strategy. These failures, Worth asserts, resulted in an involuntary guilty plea. He claims he would not have pled guilty if his attorney had done a better job.

¶17.    A claim of ineffective assistance of counsel requires proof that counsel's performance was objectively deficient and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If either prong of *Strickland* is not met, the claim fails. *Shinn v. State*, 174 So. 3d 961, 965 (¶10) (Miss. Ct. App. 2015) (citing *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006)). "A voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Thomas*, 159 So. 3d at 1215 (¶10) (internal quotation marks omitted). Thus, to obtain post-conviction relief, a petitioner who pled guilty

7

must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner would not have entered the plea. *Id.* This requires proof beyond the petitioner's own conclusory assertions. *Id.* at 1215-16 (¶10).

¶18. Worth offers nothing more than conclusory assertions regarding his attorney's failure to contact witnesses, discuss trial strategy, or obtain discovery. Accordingly, his claim of ineffective assistance as it pertains to those alleged failures is without merit.

¶19. Worth also claims that his plea was involuntary and invalid because his attorney misinformed him as to the sentence he faced. A guilty plea is valid as long as it is entered "voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Hunt v. State*, 99 So. 3d 269, 271 (¶8) (Miss. Ct. App. 2012) (quoting *Henderson v. State*, 89 So. 3d 598, 600 (¶5) (Miss. Ct. App. 2011); *Carroll v. State*, 963 So. 2d 44, 46 (¶8) (Miss. Ct. App. 2007)) (internal quotation omitted). For a plea to be voluntary, knowing, and intelligent, the judge must advise the defendant of his rights, the nature of the charge against him, and the consequences of his plea, including applicable minimum and maximum sentences. *Id.*

¶20. Worth claims that his attorney suggested that he would be sentenced to "time served" (about fifteen months at the time of his sentencing) and be "home for the holidays" if he pled guilty. Worth also claims that his attorney did not inform him that the minimum sentence was five years. Worth further alleges that his attorney felt good about the assigned judge, stating that he could "talk to" this judge and that this was the "judge we want." According to Worth, such comments led him to believe that the judge would go along with his counsel's

8

request for a sentence of time served.

¶21. Worth's sworn plea petition and plea colloquy refute these allegations. Worth's petition correctly states that the minimum sentence for his crime is five years. Worth averred at his plea hearing that he completed and discussed the petition with his attorney. His attorney stated that they had a lengthy discussion prior to the hearing. Worth did not give any indication during the colloquy that he did not understand the minimum sentence, and the record contains no suggestion that Worth was ever dissatisfied with his attorney's assistance. When asked if anyone had made him any promise of leniency or a certain sentence, Worth said no. At his sentencing hearing, Worth was given ample opportunity to speak to the judge, and he availed himself of that opportunity. The applicable minimum sentence was made clear to him, and nothing in the record indicates any confusion.

¶22. Although the plea petition and hearing transcript are the best evidence of Worth's understanding of the consequences of his plea, Worth was entitled to submit additional evidence in support of his PCR claim. *See Thomas*, 159 So. 3d at 1214-16 (¶¶5-10). However, Worth offered only an "affidavit" from his neighbor and "attorney in fact," Richard Connelly, in support of his claims that his attorney misinformed him about the statutory minimum sentence. The affidavit is entirely handwritten, and although it purports to have been sworn to before some person, that person's name is partially illegible, and the document does not bear any notarial seal or otherwise indicate the source of the person's authority to administer oaths.[1] In any event, the purported affidavit adds nothing to Worth's

---

[1] *See McGriggs v. McGriggs*, 192 So. 3d 350, 353 n.2 (Miss. Ct. App. 2015) ("An affidavit is 'a written or printed declaration or statement of facts, made voluntarily, *and*

9

claim. It merely states that Connelly was also "advised that counsel would secure a sentence of 'time served.'"

¶23. Allegations such as those advanced here by Worth fail to establish a claim for post-conviction relief when, as in this case, the circuit court's plea colloquy and voluntariness inquiry affirmatively establish that the petitioner was clearly and correctly informed of the applicable minimum sentence and other consequences of his plea. The plea colloquy was sufficient to correct any alleged misinformation provided by Worth's counsel, and Worth clearly stated under oath that he understood the relevant consequences of his plea. Accordingly, this issue is without merit. *See, e.g.*, *Minshew v. State*, 169 So. 3d 953, 956-57 (¶¶11-15) (Miss. Ct. App. 2014); *Donnelly v. State*, 841 So. 2d 207, 211 (¶¶7-9) (Miss. Ct. App. 2003); *Patrick v. State*, 815 So. 2d 1216, 1220-21 (¶12) (Miss. Ct. App. 2001).

**II.    Freedom of Speech**

¶24. Worth next argues that "all correspondence in this case was private e-mails between 2 adults posing as 2 adults, and thus protected speech." He cites no authority other than the First Amendment to the United States Constitution. The argument is frivolous. "Offers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297 (2008) (upholding as constitutional a federal statute criminalizing offers to provide or requests to obtain child pornography). "Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than

---

*confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation*.'" (Quoting *Wilcher v. State*, 863 So. 2d 776, 834 (¶209) (Miss. 2003) (quoting *Black's Law Dictionary* 58 (6th ed. 1990))).

10

speech attempting to arrange any other type of crime." *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004). Furthermore, "the identity taken by an undercover officer in an attempt to catch predators is irrelevant for First Amendment purposes." *Wang v. Sampson*, No. 08-cv-10832, 2010 WL 4340536, at *2 (E.D. Mich. Oct. 27, 2010) (collecting cases). Put simply, there is no constitutional right to solicit sex with children via the internet, regardless of whether the person solicited is an actual child, an adult offering to provide a child for sex, or an undercover officer posing as either. The issue is without merit.

### III. "Misconduct"

¶25. Under a single heading, Worth makes a series of allegations of various acts of "misconduct" by the prosecution and his attorney during preliminary and pre-sentencing proceedings in his case. The allegations are difficult to read and follow. This claim also lacks legal and evidentiary support. In any event, the claim, such as it is, is without merit. By entering a valid guilty plea, Worth waived all non-jurisdictional rights or defects which are incident to trial. *See, e.g.*, *Williams v. State*, 145 So. 3d 1241, 1244 (¶9) (Miss. Ct. App. 2014). Worth identifies no "misconduct" of the sort that would vitiate his guilty plea. As we have already determined that Worth's plea was valid, his "misconduct" claim also provides no basis for post-conviction relief.

### IV. "Medical" (Viagra) Defense

¶26. Worth claims that he has been diagnosed with erectile dysfunction and has a prescription for Viagra. He asserts that because he did not possess Viagra when he was arrested, he necessarily lacked the "ability/intention to have sexual intercourse with anyone

11

much less a minor." He argues that the circuit judge ignored this fact, as well as all other exculpatory evidence, prior to his sentencing.

¶27. However, as the trial judge specifically explained during Worth's plea hearing, Worth's guilty plea waived his right to present a defense and to require the State to prove the elements of the offense beyond a reasonable doubt. *See Singleton v. State*, 213 So. 3d 521, 524 (¶6) (Miss. Ct. App. 2016). This issue is also without merit.

## CONCLUSION

¶28. Worth fails to show that his attorney provided ineffective assistance or that any action or inaction by his attorney resulted in an involuntary guilty plea. Rather, the record supports the circuit judge's determination that Worth's plea was knowing, intelligent, and voluntary. Worth's First Amendment claim is frivolous, and his other claims are without merit and waived by his valid guilty plea. Accordingly, we affirm the circuit court's order denying Worth's PCR petition.

¶29. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**