# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-01399-COA

**TIMOTHY L. BOLTON**                                            **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2016 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY L. BOLTON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 04/10/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., BARNES AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1. Timothy Bolton was indicted for and subsequently pled guilty to two counts of felony child abuse, first-degree arson, sexual battery, and ten felony counts of simple assault on a law enforcement officer. According to the factual basis for Bolton's guilty plea, Bolton locked himself in his home with his wife and two children, ages six and nine; repeatedly forced his wife to perform oral sex on him at knife-point; threatened to kill his wife; barricaded himself and his children in a closet; continually pointed a gun at his children's heads, using them as human shields throughout an overnight standoff with law enforcement; repeatedly threatened to kill the children and deputy sheriffs; and set fires in the closet at least three times, causing the children to be overcome by smoke inhalation. The circuit court

accepted Bolton's plea and sentenced him to two consecutive life sentences and additional term-of-years sentences to run concurrently with the second life sentence.

¶2.     Just under three years after he pled guilty, Bolton filed a motion for post-conviction relief alleging that his guilty plea was involuntary and that his former attorney provided ineffective assistance of counsel.  Bolton alleges that his former attorney, Judith Barnett, predicted ("informed [Bolton] that [she] anticipated") that the judge would sentence him to only ten years in prison, with five years suspended and only five years to serve.  Barnett confirms this allegation in an affidavit submitted in support of Bolton's motion, although her affidavit does not explain the basis for the prediction.  The circuit judge—who also conducted Bolton's plea hearing and imposed his sentence—denied Bolton's motion for post-conviction relief without an evidentiary hearing.  Bolton filed a timely notice of appeal and argues that the circuit court erred by rejecting his involuntary plea and ineffective assistance claims and by denying his motion without an evidentiary hearing.

¶3.     We conclude that the circuit court correctly denied Bolton's motion.  His attorney's sentencing prediction was just that—a prediction.  Prior to accepting Bolton's plea, the circuit court conducted a thorough plea colloquy and clearly advised him of the applicable statutory maximum sentences and the court's full discretion to impose those sentences.  Bolton's plea was voluntary, and his ineffective assistance claim fails as a matter of law.  Accordingly, we affirm.

**FACTS AND PROCEDURAL HISTORY**

2

*Factual Background*

¶4.     On March 3, 2007, Bolton locked himself, his wife, and his two sons, ages six and nine, inside their house. Bolton forced his wife to perform oral sex on him repeatedly at knife-point. Bolton also forced his wife to smoke marijuana laced with methamphetamine. He told her that he was going to kill her after he was through with her, and he wanted the drugs to show up on her autopsy.

¶5.     Bolton's wife eventually escaped through a window, called 911, and reported that Bolton was barricaded inside the house with their two children. Officers from the Lee County Sheriff's Department arrived at the house around 11 p.m. They made phone contact with Bolton and had several conversations with him, continuing until approximately 3:20 p.m. the following day, when Bolton was finally taken into custody.

¶6.     During this time, a SWAT team breached the residence and found that Bolton had barricaded himself and the children in a bedroom closet. Bolton was armed with a pistol, and he set fires in the closet at least three times using an accelerant and a butane lighter. Officers managed to keep the door partially opened to allow air in to the children. However, Bolton held his children in front of him, using them as human shields. Bolton continually pointed his gun at his children's heads and told officers that he was going to kill his children unless the officers brought his wife inside to talk to him. Officers would not agree to bring Bolton's wife into the house.

¶7.     At some point, Bolton crawled to the edge of the closet and began striking a nearby

3

officer in the head with a metal rod, trying to get the closet door closed. Bolton repeatedly threatened to kill his children, and he told his children he was going to kill them. He also threatened to kill the officers and repeatedly pointed his pistol at them.

¶8. Later, smoke began to pour out of the closet so thickly that the officers stationed outside the closet had to rotate out of the home for air. Officers then set up fans to pull the smoke out of the bedroom. A doctor on the scene told officers that the door would have to be breached because the children were obviously weakening and could be heard crying out for help. Bolton eventually allowed one of his children to leave the closet. He then turned to his other child, again put the gun to the child's head, told the child that he was going to kill him, and told the police that he would kill them as well.

¶9. Around 3:20 p.m., the day after the standoff began, Bolton finally gave himself up. During the entire time that Bolton held his children hostage in the closet, he would not allow them to eat, and he forced them to defecate and urinate in the closet. When the children finally were taken from the closet, they required treatment for smoke inhalation.

*Indictment and Guilty Plea*

¶10. In July 2007, a Lee County grand jury returned a fourteen-count indictment charging Bolton with two counts of felony child abuse, first-degree arson, sexual battery, and ten felony counts of simple assault on a law enforcement officer. Bolton subsequently filed a petition to plead guilty to each of the fourteen charges in the indictment.

¶11. Bolton pled guilty on November 6, 2007, following a hearing. At the hearing, the

4

State provided the above narrative as the factual basis for the charges, which the State expected to prove through the testimony or statements of Bolton's ex-wife[1] and the testimony of law enforcement officers, doctors, and emergency medical technicians who responded to the scene.

¶12. During a thorough plea colloquy, Bolton admitted that he was guilty of each of the charged offenses and that the State could prove the factual basis for the charges if the case went to trial. Bolton stated that he understood that he was entering an open plea and that the State would not make a sentencing recommendation. Bolton was also thoroughly advised of the minimum and maximum sentences for each count of the indictment.

¶13. Bolton twice stated that no one had forced, threatened, or pressured him in any way or "promised [him] anything" in order to get him to plead guilty to all fourteen charges. The court then asked Bolton's attorney, Judith Barnett, whether she had "told [Bolton] anything, led him to believe, or tried to convince him, that he [would] get any specific sentence, that he will be given a specific number of years or . . . a specific sentence." Barnett answered, "No, Your Honor." The court then asked Bolton, "[H]as anyone made any representations to you, or have you been promised anything by anyone with regard to what the sentences of this Court may be as to each of your charges?" Bolton answered, "No, sir." Bolton stated that he was satisfied with Barnett's advice and services and that he believed that Barnett had properly advised him and had properly represented his best interest.

---

[1] Bolton and his wife divorced prior to his guilty plea.

5

¶14. Before the court imposed his sentence, Bolton expressed regret, said that he was high on crystal meth when he committed the crimes, and begged for mercy. Bolton's ex-wife similarly testified that she believed that Bolton's crimes were related to his drug use, and she requested leniency. The court then imposed the maximum sentence on each count: a life sentence for each count of felony child abuse, twenty years for arson, thirty years for sexual battery, and five years for each count of simple assault on a law enforcement officer. The court ordered that the life sentences would be served consecutively and that all twelve term-of-years sentences would run concurrently to the second life sentence.

*Motion for Post-Conviction Relief*

¶15. On November 2, 2010, Bolton filed a motion for post-conviction relief. Represented by new counsel, Bolton alleged that Barnett provided ineffective assistance of counsel by recommending that he plead guilty. He also alleged that Barnett's advice rendered his guilty plea involuntary. Bolton's motion relied on his own affidavit and the affidavits of his ex-wife, his sister, his mother, and Barnett.

¶16. Barnett's affidavit states that she was scheduled to appear in court with Bolton on November 5, 2007, but she failed to appear because she was in Yazoo County representing another client. No continuance had been granted in Bolton's case, but Barnett "was expecting a continuance," so she did not appear. Barnett says that the circuit judge telephoned her that evening to inquire why she failed to appear. Barnett says that the judge warned her to be in court the following morning or else he would find her in contempt.

6

Barnett appeared in court with Bolton the next day, November 6, 2007. She alleges that the circuit judge "purposefully" called Bolton's case last. She alleges that the judge did so because he "wanted [her] to have to wait" and because "he knew that [she] had to drive back to Jackson."

¶17. In any event, Barnett's affidavit confirms that she recommended to Bolton that he enter an open plea to the charges. Barnett says that she "informed [Bolton] that [she] anticipated that he would receive a ten-year sentence with five . . . years suspended and with five . . . years to serve." Barnett's affidavit does not explain why she expected the court to impose such a sentence for the serious, violent crimes that Bolton committed. Barnett states that she also told Bolton that "if he went to trial and was found guilty, he would likely receive a life sentence." She says that she also explained to Bolton "the sentencing guidelines and the ramifications of both his plea and trial." In her affidavit, Barnett opines that Bolton's "sentence was unreasonably harsh" and unjust.

¶18. In his affidavit, Bolton confirms that Barnett told him that she "anticipated" that he would be sentenced to ten years with five years suspended and five to serve. Bolton also states that he relied on Barnett's advice. Bolton also says that Barnett instructed him "to say 'yes' to all the questions during [his] guilty plea [hearing]."

¶19. The affidavits of Bolton's sister, Sandra Fuller, and his mother, Marguerite Chiasson, are essentially identical. Both state that Barnett initially "assured [them] that [Bolton] should receive a ten-year . . . sentence with a large part of it being suspended." However, Fuller

7

states that the morning that Bolton pled guilty, "Barnett telephoned [her] from the courthouse . . . and . . . told [her] . . . to get to the courthouse as soon as possible because the judge [was] trying to give [Bolton] life in prison." Fuller called Chiasson and met her and Barnett at the courthouse. Both Fuller and Chiasson state that during lunch Barnett "indicated that the judge was very angry and assured us that she could appeal anything."

¶20. In her affidavit, Bolton's ex-wife, Deborah Lou Conley, recants her prior statements that Bolton forced her to perform oral sex at knife-point. Conley attributes Bolton's other crimes to crystal meth and depression, and she claims that Bolton "never had any intentions of harming anyone." Conley alleges that "[Barnett] told [her] and [Bolton] several times that she anticipated that he would get a 10 year sentence with 5 years suspended and 5 years to serve." Conley claims that on the day that Bolton pled guilty, Barnett told Bolton that "the judge was very upset with [Barnett]" because Barnett failed to appear in court the prior day. Barnett allegedly told them that they had only two options: he could enter an open plea or he "could fire her and get another lawyer because she was not going to trial."

¶21. In September 2011, Bolton filed a motion for summary judgment on his motion for post-conviction relief. In March 2013 and again in March 2014, Bolton filed a "request for hearing" on his summary judgment motion. In January 2015, the circuit court ordered the State to respond to Bolton's motion for post-conviction relief. In March 2015, the State responded and denied that Bolton was entitled to relief. On August 29, 2016, the circuit court entered an opinion and order denying Bolton's motion for post-conviction relief.

8

¶22. Bolton filed a timely notice of appeal. On appeal, he argues that (1) his plea was involuntary, (2) Barnett provided ineffective assistance of counsel, and (3) the circuit court erred by denying his motion for post-conviction relief without an evidentiary hearing.

**ANALYSIS**

### I. Involuntary Guilty Plea

¶23. "A guilty plea is valid as long as it is entered voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Worth v. State*, 223 So. 3d 844, 850 (¶19) (Miss. Ct. App. 2017) (quotation marks omitted), *cert. denied*, 233 So. 3d 819 (Miss. 2018). "For a plea to be voluntary, knowing, and intelligent, the judge must advise the defendant of his rights, the nature of the charge against him, and the consequences of his plea, including applicable minimum and maximum sentences." *Id.*

¶24. A defendant's guilty plea may be deemed involuntary if the evidence shows that the defendant was misinformed regarding the applicable minimum or maximum sentence and that the misinformation was never corrected by the defendant's attorney or during his plea colloquy. *See Wrenn v. State*, 207 So. 3d 1252, 1257-59 (¶¶15-22) (Miss. Ct. App. 2017). This clearly is not such a case. Bolton understood that he was entering an open plea and that the State was not making any sentencing recommendation. Moreover, Bolton does not allege that anyone misinformed him as to the maximum sentences for any of the offenses to which he pled guilty. The circuit court clearly informed Bolton of the maximum sentence for each charge, that the court had discretion to impose any sentence up to the maximum, and that the

9

court could order the sentences to run consecutively. Bolton confirmed under oath that he understood all of this.

¶25. Bolton's claim in this case is different. He does not allege that Barnett misinformed him about any "concrete legal fact"; rather, the "alleged misinformation" in this case is Barnett's "*opinion*" regarding the sentence that the court would likely impose upon entry of a guilty plea. *State v. DiFrisco*, 645 A.2d 734, 743 (N.J. 1994) (emphasis added) (discussing this difference). Our Supreme Court has held that when a defendant advances such a claim, the threshold "relevant distinction is between a 'generalized prediction' [of a lesser sentence] and a 'firm representation' of such lesser sentence." *Myers v. State*, 583 So. 2d 174, 177 (Miss. 1991) (quoting *Sanders v. State*, 440 So. 2d 278, 287 n.6 (Miss. 1983) (later superseded by statute on other grounds)). In *Myers*, the Supreme Court held that a post-conviction petitioner "may find succor only in the latter," i.e., the petitioner may obtain relief only if there is evidence that his attorney made a "firm representation" that he would receive a lesser sentence. *Id.*

¶26. Similarly, the United States Court of Appeals for the Fifth Circuit has held that a defendant's guilty plea is not involuntary simply because it was entered in reliance on his attorney's "prediction, prognosis, or statement of probabilities" as to the defendant's likely sentence. *Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989). Counsel's prediction that the defendant "probably" would receive a sentence of less than fifteen years was not a "specific, firm . . . representation," and it did not render the defendant's guilty plea

10

involuntary. *Id.*; *accord United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987) ("[A] defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary."); *Karriem v. State*, 57 So. 3d 677, 679-80 (¶¶5-8) (Miss. Ct. App. 2011) (holding that counsel's "overly optimistic prediction" that the circuit court might apply the non-adjudication statute did not render defendant's guilty plea involuntary); *Riggs v. State*, 912 So. 2d 162, 164-65 (¶7) (Miss. Ct. App. 2005) (holding that defense counsel's "generalized prediction" of a lesser sentence upon a plea of guilty is insufficient, in and of itself, to render the plea involuntary).[2]

¶27.    The distinction between a "generalized prediction" and a "firm representation" is dispositive in this case. *Myers*, 583 So. 2d at 177. Bolton's affidavit and Barnett's affidavit expressly agree that, before Bolton pled guilty, Barnett "informed [him] that [she] *anticipated* that he would receive a ten-year sentence with five . . . years suspended and five . . . years to serve." (Emphasis added). Bolton does not allege that Barnett ever *promised* him a lesser sentence. Nor does Bolton allege that Barnett ever advised him—or that he ever believed—that the circuit judge was *required* to impose a lesser sentence. What is alleged

---

[2] *See also*, *e.g.*, *Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984) ("An attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea."); *Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970) ("An erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary." (citations omitted)); *West v. State*, 702 S.W.2d 629, 633 (Tex. Ct. Crim. App. 1986) (quoting *Wellnitz*, *supra*, with approval as having "stated correctly" the "general rule for this type of case").

11

is that Barnett told Bolton that she "anticipated" that the judge would impose a lesser sentence. Barnett's prediction did not come with any promise or guarantee. In addition, following Barnett's prediction, the circuit court thoroughly informed and warned Bolton of the possible sentences for his crimes if he pled guilty. *See Larry v. State*, 129 So. 3d 263, 265 (¶¶7-9) (Miss. Ct. App. 2013) (holding that even if the defendant's attorney "assured" him that he would receive a lesser sentence, the circuit court corrected any misconception by advising the defendant of the applicable maximum sentence during the plea colloquy). Barnett's prediction of a lesser sentence does not render Bolton's subsequent guilty plea involuntary. *See Myers*, 583 So. 2d at 177.

## II. Ineffective Assistance of Counsel

¶28. "A claim of ineffective assistance of counsel requires proof that counsel's performance was objectively deficient *and* that the defendant suffered prejudice as a result." *Worth*, 223 So. 3d at 849 (¶17) (emphasis added) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under *Strickland*'s first prong, the defendant must overcome a "strong but rebuttable presumption[] that counsel's performance falls within the wide range of reasonable professional assistance." *Rankin v. State*, 636 So. 2d 652, 656 (Miss. 1994). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Under *Strickland*'s second prong, a defendant "who pled guilty must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's

12

errors, the [defendant] would not have entered the plea." *Worth*, 223 So. 3d at 849 (¶17). "The defendant has the burden of proof on both prongs." *Rankin*, 636 So. 2d at 656. "If either prong of *Strickland* is not met, the claim fails." *Worth*, 223 So. 3d at 849 (¶17).

¶29. Bolton alleges that Barnett provided him with ineffective assistance of counsel, primarily by telling him that she "anticipated" that he would receive a sentence of only ten years with five years suspended and five years to serve. This claim mirrors Bolton's involuntary-plea claim and fails for similar reasons.

¶30. To begin with, "[a] voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Worth*, 223 So. 3d at 849 (¶17) (quoting *Thomas v. State*, 159 So. 3d 1212, 1215 (¶10) (Miss. Ct. App. 2015)). As explained just above, Barnett's advice did not render Bolton's guilty plea involuntary because it was only a prediction of what she "anticipated," not a promise or a guarantee, and because the circuit court thoroughly informed and warned Bolton of the potential sentences that he faced if he pled guilty. Having just held that Bolton's guilty plea *was* voluntary—and that Barnett's prediction did *not* render the plea involuntary—we cannot say that the "alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Id.*; *see United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (holding that an unsuccessful claim that counsel's erroneous sentencing prediction rendered defendant's plea involuntary could not be recharacterized as an ineffective assistance claim).

¶31. Moreover, we agree with the reasoning of other courts that "have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (collecting cases); *accord, e.g.*, *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) ("A[n] . . . erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."); *Sweeney*, 878 F.2d at 70 (holding that an erroneous sentencing prediction—as opposed to objectively "erroneous legal advice about the ultimately knowable"—does not constitute ineffective assistance of counsel); *DiFrisco*, 645 A.2d at 746 ("Erroneous sentencing predictions . . . do not amount to constitutionally-deficient performance under *Strickland*."). In prior cases, this Court has also held that inaccurate sentencing predictions by defense counsel did not constitute ineffective assistance of counsel. *See McMickle v. State*, 190 So. 3d 872, 876-77 (¶13) (Miss. Ct. App. 2015); *Karriem*, 57 So. 3d at 680 (¶¶9-11); *Davis v. State*, 5 So. 3d 435, 437 (¶¶5-7) (Miss. Ct. App. 2008); *Riggs*, 912 So. 2d at 164-65 (¶7).

¶32. We acknowledge that Barnett's sentencing prediction proved to be profoundly mistaken. We also acknowledge that Barnett's affidavit provides no explanation as to why she "anticipated" that the judge would sentence Bolton to ten years, with only five years to serve, for such serious, violent crimes. In addition, as noted above, the sentencing judge specifically asked Barnett whether she had "told [Bolton] anything, led him to believe, or

14

tried to convince him, that he [would] get any particular sentence, that is that he [would] be given a specific number of years." In response, Barnett stated simply, "No, Your Honor." These facts are concerning. However, notwithstanding these issues, and even accepting Bolton's allegations as true, Bolton and Barnett are in agreement that she only offered a prediction—what she "anticipated." As we have explained above, such a prediction does not call into question the voluntariness of a guilty plea when, as in this case, the court has thoroughly advised the defendant of the potential sentences that he faces upon entry of the plea. In addition, based on Bolton's thorough plea colloquy, the "alleged ineffectiveness" does not undermine "the voluntariness of the giving of the guilty plea." *Worth*, 223 So. 3d at 849 (¶17) (quoting *Thomas*, 159 So. 3d at 1215 (¶10)). Therefore, Bolton's ineffective assistance claim is without merit.

### III. Evidentiary Hearing

¶33. On a motion for post-conviction relief, "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal . . . ." Miss. Code Ann. § 99-39-11(2) (Rev. 2015). "If the motion is not [summarily] dismissed . . . , the judge shall order the state to file an answer or other pleading . . . or to take such other action as the judge deems appropriate . . . ." *Id.* § 99-39-11(3). "[A]fter the [State's] answer is filed . . . , [the judge] shall, upon a review of the record, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such

15

disposition of the motion as justice shall require." *Id.* § 99-39-19(1).

¶34.    In this case, the circuit court ordered the State to respond to Bolton's motion, but the court ultimately denied the motion without an evidentiary hearing. On appeal, Bolton argues that he was entitled to an evidentiary hearing. However, for the reasons discussed above, Bolton's claims fail as a matter of law even if we accept as true the allegation, contained in Bolton's affidavit and Barnett's affidavit, "that [Barnett] informed [Bolton] that [she] anticipated that [Bolton] would receive a ten-year sentence with five . . . years suspended and with five . . . years to serve." This allegation is arguably inconsistent with statements made by Bolton and/or Barnett during Bolton's plea hearing. In addition, there are apparent inconsistencies among certain statements made in the various affidavits that Bolton submitted in support of his motion for post-conviction relief. However, for the reasons explained above, Bolton's present allegations, even if true, do not render his plea involuntary. Nor do his allegations support a viable claim of ineffective assistance of counsel. Because Bolton's post-conviction claims fail as a matter of law, it was unnecessary for the circuit court to hold an evidentiary hearing on his motion. *See, e.g.*, *Pinkney v. State*, 192 So. 3d 337, 341-42 (¶13) (Miss. Ct. App. 2015). Accordingly, this issue is without merit.

## CONCLUSION

¶35.    The circuit court correctly concluded that Bolton's claims fail as a matter of law. Therefore, the court properly denied Bolton's motion without an evidentiary hearing.

¶36.    **AFFIRMED.**

16

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**