# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00736-COA

LUKE BARTON                                                                APPELLANT

v.

STATE OF MISSISSIPPI                                                         APPELLEE

DATE OF JUDGMENT:              04/16/2018
TRIAL JUDGE:                   HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:     LEAKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        IMHOTEP ALKEBU-LAN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:            CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               REMANDED IN PART - 02/25/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE CARLTON, P.J., GREENLEE AND TINDELL, JJ.

## TINDELL, J., FOR THE COURT:

¶1.     On November 4, 2015, a Leake County grand jury indicted Luke Barton for Count I, the first-degree (deliberate-design) murder of his wife, Tonya Barton; Count II, the aggravated assault of his father-in-law, Donald Johnson; and Count III, the aggravated assault of his mother-in-law, Addie Johnson.  Following a plea hearing, the Leake County Circuit Court found that Barton had voluntarily pled guilty to all three counts.  The circuit court sentenced Barton to life imprisonment without eligibility for parole for Count I and to concurrent fifteen-year sentences for Counts II and III, with all three sentences to be served in the custody of the Mississippi Department of Corrections (MDOC).

¶2. Barton filed an unsuccessful motion for post-conviction collateral relief (PCR). On appeal from the circuit court's denial of his PCR motion, Barton argues that (1) he never entered a voluntary guilty plea to any of his charges; (2) his attorneys rendered ineffective assistance of counsel; and (3) the circuit court erroneously denied his recusal motion.

¶3. Because we find that a sufficient factual basis supported Barton's guilty pleas in Counts I and II, we affirm the circuit court's denial of Barton's requested PCR relief with regard to those two charges. The record reveals, however, that Barton never voluntarily, knowingly, and intelligently entered a plea to Count III and that no factual basis was established for Count III. We must therefore reverse the circuit court's denial of Barton's PCR motion as to Count III of his indictment and remand this case for further proceedings as to that charge.

**FACTS**

¶4. On January 7, 2016, the circuit court found that Barton had voluntarily pled guilty to all three counts charged in his indictment. The circuit court sentenced Barton to life imprisonment without eligibility for parole for the murder charge and to concurrent fifteen-year sentences for each of the aggravated-assault charges, with all three sentences to be served in MDOC's custody. The following week, on January 14, 2016, the circuit court re-sentenced Barton as to Count II and ordered that Barton's fifteen-year sentence for Count II run consecutively to his life sentence for Count I. By order entered May 25, 2016, the circuit court modified the January 14, 2016 order and reinstated Barton's original concurrent fifteen-year sentence for Count II. In addition, the circuit court ordered that Barton be placed on five

2

years of supervised probation following his release from prison.

¶5.     On December 5, 2017, Barton filed a PCR motion, which the circuit court heard on February 1, 2018. On February 12, 2018, Barton filed an unsuccessful motion for the current circuit judge's recusal.[1]  On April 16, 2018, the circuit court entered an order denying Barton's PCR motion.  Aggrieved, Barton appeals.

## STANDARD OF REVIEW

¶6.     "We review a circuit court's findings of fact regarding denial or dismissal of a PCR motion for abuse of discretion." *Montalto v. State*, 272 So. 3d 132, 135 (¶12) (Miss. Ct. App. 2019).  We review questions of law de novo.  *Id.*

## DISCUSSION

### I.     Guilty Pleas

¶7.     Barton claims that his guilty plea to Count I for murder was not voluntary, knowing, and intelligent because no factual basis existed for his plea.  As for Counts II and III for aggravated assault, Barton asserts that he never personally entered pleas to those charges. Instead, he contends that one of his attorneys entered the guilty pleas to Counts II and III. Barton therefore argues that the circuit court erred in denying his PCR motion on the basis that he had entered voluntary guilty pleas to all three charges.

¶8.      Rule 8.04(A)(3) of the Uniform Rules of Circuit and County Court Practice formerly provided that "[b]efore the trial court may accept a plea of guilty, the court must determine

---

[1] Judge Marcus Gordon presided over Barton's January 7, 2016 plea hearing.  Judge Gordon retired in March 2016, and Judge Christopher Collins succeeded him.  Judge Collins presided over the hearing on Barton's PCR motion.

3

that the plea is voluntarily and intelligently made and that there is a factual basis for the plea." URCCC 8.04(A)(3).[2] "For a plea to be voluntary, knowing, and intelligent, the judge must advise the defendant of his rights, the nature of the charge against him, and the consequences of his plea, including applicable minimum and maximum sentences." *Worth v. State*, 223 So. 3d 844, 850 (¶19) (Miss. Ct. App. 2017). To establish a factual basis for a plea, each essential element of the offense must be shown. *Smith v. State*, 86 So. 3d 276, 280 (¶10) (Miss. Ct. App. 2012). A defendant's admission may provide the factual basis for a plea, "but the admission must contain factual statements constituting a crime or be accompanied by independent evidence of guilt." *Venezia v. State*, 203 So. 3d 1, 2 (¶6) (Miss. Ct. App. 2016) (quoting *Hannah v. State*, 943 So. 2d 20, 26-27 (¶16) (Miss. 2006)). On the other hand, "[i]t is not error to accept a plea of guilt despite the defendant's protestations of innocence where there exists substantial evidence of the defendant's guilt." *Smith*, 86 So. 3d at 280 (¶10). Other avenues for establishing a factual basis include "a statement of the prosecutor, the testimony of live witnesses, and prior proceedings." *Venezia*, 203 So. 3d at 2 (¶6). While a sufficiently detailed indictment may also provide the factual basis for a plea, "the indictment must be read into the record at the plea hearing." *Id.* at 3 (¶7). "The reviewing court may look beyond the plea transcript to determine whether there was a factual basis for the charge, and review the record as a whole." *Id.* at 2-3 (¶6) (internal quotation marks omitted).

---

[2] Effective July 1, 2017, the Mississippi Rules of Criminal Procedure replaced the Uniform Rules of Circuit and County Court with regard to criminal practice. At the time of Barton's guilty pleas, however, the former rules remained in effect.

### a. Count I of Barton's Indictment

¶9. At the beginning of Barton's plea hearing, one of his attorneys stated that Barton "desires to be rearraigned; and therefore we waive the reading of the indictment and enter a plea of guilty to all three counts." Despite the defense's statement, the circuit court required the State to read Count I of the indictment to Barton. The circuit court did not, however, require Counts II and III to be read to Barton. Following the State's reading of Count I, the circuit judge asked Barton, "[T]o that indictment[,] how do you plead?" In response, Barton answered, "Guilty." With Barton's plea petition in front of him, the circuit judge proceeded to question Barton. In response to the circuit judge's questions, Barton denied that he was under the influence of alcohol or any drugs that might affect his thinking. He also acknowledged that he understood he was pleading guilty to first-degree murder and that life imprisonment was the penalty for that charge.

¶10. After the circuit judge and Barton discussed the terms of Barton's plea-bargain agreement as to Count I, the following exchange occurred:

THE COURT:    I know nothing of the facts of this case. I have read some account of it in the . . . [newspaper], but I want you to tell me what happened. Who shot you?

BARTON:    I really don't --

THE COURT:    You really don't know?

BARTON:    I know that I was wounded. I can't really say that -- unless it's an accident, you know, but --

. . . .

THE COURT:    What did he say?

5

COUNSEL: He said that he couldn't be sure how he got shot, and there's a chance that he could have accidently shot himself. Is that right? Is that right?

BARTON: Yes.

. . . .

THE COURT: Luke Barton, did you know Tonya Barton?

BARTON: Yes, sir.

THE COURT: You knew her during her lifetime; is that right?

BARTON: Yeah.

THE COURT: Was there a relationship with you and Tonya Barton?

BARTON: That was my wife.

THE COURT: That was your wife?

BARTON: Yes, sir.

THE COURT: How long had she been your wife?

BARTON: Eleven years.

THE COURT: Is that the victim of this murder case?

BARTON: Yes, sir.

THE COURT: Why is -- you have been indicted with deliberate design. Why did you kill her?

BARTON: It was an accident.

THE COURT: It was an accident? Then I am not going to accept your plea of guilty to murder.

COUNSEL: It was an accident, that you may have shot yourself --

6

BARTON:              Oh --

COUNSEL:             -- but you were intending to shoot her.

BARTON:              I wasn't intending to shoot her.

COUNSEL:             No.  Could we talk to him just one second, Your Honor?

BARTON:              I don't really understand --

COUNSEL:             He's confused.

THE COURT:           All right.  All right.

BARTON:              -- what you're talking about.

THE COURT:           Ross, he's been indicted for deliberate design, Count I, murder.

COUNSEL:             Yes, sir.  Yes, sir.

THE COURT:           And that's what -- if I accept his plea, that's what he must say, that he did that --

COUNSEL:             Yes, sir.

THE COURT:           -- according to this indictment.

COUNSEL:             Yes, sir.

(Counsel confer with the Defendant.)

THE COURT:           Again --

BARTON:              I intended to shoot --

THE COURT:           -- I will ask you the question.  Did you shoot Tonya Barton deliberately?  Did you intend to kill her?

BARTON:              Yes.

THE COURT:           That's equivalent to -- that's in answer to a charge of

7

murder, is what I'm asking you?

BARTON:        Yes.

THE COURT:     I have a lot of other questions, but I'm going to forgo them. You have a constitutional right to have a trial by jury. . . . The lawyers here have a duty to--they have a responsibility to explain to you the minimum and maximum sentence for the crime of murder. They have the responsibility to explain to you what the penalty would be by this court. That's their responsibility, and their responsibility is to talk to the prosecuting attorney to see whether or not there's any type of plea that can be arranged. Now, they have done so, and they have talked to the prosecutor[,] and they have talked to me about it. I want to offer you an opportunity to have a trial by jury if you would like to have one. That's your constitutional right.

BARTON:        No, thank you.

THE COURT:     No, thank you. I'll accept the Defendant's plea. I'm satisfied that he understands what he's doing; it's a free and voluntary plea; and that he has waived his constitutional rights, including the constitutional right to have a trial by jury on the charge for which he has now entered a plea of guilty. In my opinion[,] he is guilty of that crime. Are you satisfied with your lawyers, Luke Barton?

BARTON:        Yes, sir.

¶11.   Upon review, we conclude the record contains sufficient evidence to demonstrate that a factual basis existed for Barton's guilty plea to Count I. Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014) defines first-degree murder as "[t]he killing of a human being without the authority of law . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being . . . ." The State read aloud Count I of Barton's

8

indictment, which set forth that Barton "did willfully, unlawfully, feloniously, without authority of law and with deliberate design to effect the death of the person killed, or of any human being, did kill and murder one Tonya Barton, a human being, contrary to and in violation of Section 97-3-19(1)(a) . . . ." Following the State's reading of Count I, Barton pled guilty to the first-degree murder of his wife. When the circuit judge asked Barton to relate the circumstances surrounding his wife's shooting, Barton appeared to become confused. Although Barton at one point stated that he did not intend to shoot his wife, he later amended his statement and averred on the record that he deliberately shot his wife with the intent to kill her. Based on such evidence, we find the record contains an adequate factual basis to support Barton's guilty plea to Count I for first-degree murder.[3]

### b. Counts II and III of Barton's Indictment

¶12. After accepting Barton's guilty plea to Count I, the circuit court turned its attention to Barton's two aggravated-assault charges. With regard to Counts II and III of the indictment, the following exchange occurred:

| THE COURT: | **Now, there[ are] two other charges. I will not go into those, but is there a plea of guilty to Count II?** |
|---|---|
| **COUNSEL:** | **Yes, sir.** |
| THE COURT: | **As charged?** |

---

[3] Although we ultimately find the record contains a sufficient factual basis to support Count I of Barton's indictment, we note that further evidentiary support could have been established had the circuit court conducted a thorough on-the-record review of the plea petition with Barton and had the State recited on the record the facts and circumstances under which Barton committed the murder. We remind circuit courts and attorneys that best practice dictates these procedures be followed in every plea hearing.

COUNSEL:       Count II and III, aggravated assault.

THE COURT:     **As charged?**

**COUNSEL:**       **Yes, sir.**  And I believe there's a recommendation from the district attorney's office.

THE COURT:     Mr. Kilgore, are you the prosecutor involved in this case?

PROSECUTOR:    I am, Your Honor.

THE COURT:     The prosecution has offered a plea of guilty to the crime of murder.  They have offered a guilty plea to Count II, that of manslaughter.

COUNSEL:       No.  Aggravated assault.

. . . .

THE COURT:     Aggravated assault with a penalty of fifteen years to run concurrent with the sentence of murder.  They have offered--they say that you have agreed to it, a sentence of fifteen years to Count III to run concurrent with Count II and Count I.  Is that your agreement?

PROSECUTOR:    Yes, Your Honor.

THE COURT:     Is that your recommendation?

PROSECUTOR:    Yes, Your Honor.

THE COURT:     Gentlemen, did I state it correctly?

COUNSEL:       You did, Your Honor.

THE COURT:     Is that your plea-bargaining agreement?

**COUNSEL:**       **Yes, sir.**

THE COURT:     Murder -- a sentence of murder; in Count II a sentence of, aggravated assault, fifteen years --

10

| | |
|---|---|
| **COUNSEL:** | **Yes, sir.** |
| THE COURT: | -- to run concurrent with Count I? |
| **COUNSEL:** | **Yes, sir.** |
| THE COURT: | And then in Count III, a plea of guilty to Count III of aggravated assault, have a sentence of fifteen years to run concurrent with the sentence pronounced in Count I? |
| **COUNSEL:** | **Yes, Your Honor.** |
| THE COURT: | Ma'am, did you get my statement? **That will be the sentence of the Court now.** It's the sentence of the Court, Luke Barton, that you serve life imprisonment in -- |
| COUNSEL: | Count I. |
| THE COURT: | -- Count I with the Department of Corrections, and in Count II you are sentenced to serve fifteen years to run concurrent with Count I; and in . . . Count III you are sentenced to serve fifteen years . . . [for] the crime of aggravated assault to run concurrent with the sentence pronounced in Count I. **Now, that sentence will be the sentence, gentlemen . . . .** |

(Emphasis added).

¶13. As the record reflects, Barton never actually entered a plea to either Count II or III before the circuit court sentenced him for those charges. In addition, no factual basis was ever provided for either Count II or III because the indictment was not read into the record, Barton made no admissions regarding the aggravated-assault charges, and there was no statement by the prosecutor or witness testimony to establish the circumstances surrounding the charges. *See Venezia*, 203 So. 3d at 2-3 (¶¶6-7) (discussing the various ways that a factual basis might be established). Moreover, the record reflects that the circuit court never

11

informed Barton of the consequences of pleading guilty to Counts II and III.

¶14.   At the subsequent hearing a week later on January 14, 2016, the circuit judge explained that he wanted to "re-dictate" Barton's sentence as to Count II, the aggravated assault of Barton's father-in-law, because the judge "was not informed of the conditions and the facts of . . . [Barton's] crime, and if it had been known, the [D]efendant would not have received a concurrent sentence in Count II."  After changing Barton's fifteen-year sentence in Count II to run consecutively to rather than concurrently with the life sentence in Count I, the circuit court gave Barton the opportunity to withdraw his guilty plea.  After conferring with his attorney, Barton stated that he did not wish to proceed to a jury trial.

¶15.   In questioning Barton about the facts surrounding Count II, the circuit judge asked why Barton had shot his father-in-law.  The following exchange occurred:

> THE COURT:       Why did you shoot him?
>
> . . . .
>
> BARTON:          He went for -- he made a false move in his pocket[,] and I shot him.
>
> . . . .
>
> THE COURT:       And so you decided he was about to assault you, so you shot him.  Is that what you are telling me?
>
> BARTON:          Yes, sir.
>
> THE COURT:       And you are pleading guilty to shooting your father-in-law?
>
> BARTON:          Yes, sir.

¶16.   One of Barton's attorneys also questioned Barton on the record about Barton's guilty

12

plea to Count II. In so doing, Barton's attorney stated, "I told you, didn't I, that you didn't have to accept this; the Judge would give you one chance to withdraw your plea of guilty where we'd have a trial?" Barton answered affirmatively. Barton's attorney then asked whether Barton wanted to "stick by . . . [his] plea of guilty" or whether Barton wanted to go to trial, and Barton affirmed that he wanted to abide by his guilty plea.

¶17. The order entered the same day as the January 14, 2016 hearing stated that Barton was rearraigned and that Barton "entered a plea of guilty to the three charges" in his indictment. As a review of the January 14, 2016 hearing transcript reveals, however, no discussion ever arose as to Barton's aggravated-assault charge in Count III or how Barton wished to plead in that count.

¶18. With regard to Count II of Barton's indictment, we find that the first hearing on January 7, 2016, failed to establish any factual basis for a plea to that charge of aggravated assault. We further conclude, however, that a sufficient factual basis was established for Barton's guilty plea in Count II at the second hearing on January 14, 2016. Count II of the indictment charged Barton with the aggravated assault of his father-in-law in violation of Mississippi Code Annotated section 97-3-7(2)(a)(ii) (Rev. 2014). Section 97-3-7(2)(a)(ii) provides that "[a] person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." During the January 14, 2016 hearing, Barton admitted that he intentionally shot his father-in-law, and when the circuit judge asked whether Barton was pleading guilty to that crime, Barton answered affirmatively. Based

13

upon Barton's admission at the second hearing, as well as his prior admission that he intentionally shot his wife, we find that the record contains a sufficient factual basis for his guilty plea to Count II and that Barton voluntarily, knowingly, and intelligently made that plea.

¶19. As to Count III, however, the record clearly reflects that Barton never voluntarily, knowingly, and intelligently pled guilty to that charge and that no factual basis for Count III was ever established. We therefore conclude that the circuit court erred by denying Barton's requested PCR relief with regard to Count III.

## II. Ineffective Assistance

¶20. On appeal, Barton contends his attorneys provided ineffective assistance because at the January 7, 2016 hearing, they coerced him to plead guilty to Count I and because they, rather than he, entered guilty pleas to Counts II and III.

¶21. "[A] presumption exists that an attorney's performance falls within the wide range of reasonable professional assistance . . . ." *Smith v. State*, 275 So. 3d 100, 112 (¶39) (Miss. Ct. App. 2019). To establish ineffective assistance, Barton must prove (1) his attorneys were deficient, and (2) the deficiency deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Worth*, 223 So. 3d at 849 (¶17). Thus, a petitioner who pled guilty and subsequently seeks post-conviction relief "must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner

14

would not have entered the plea. This requires proof beyond the petitioner's own conclusory assertions." *Id.* at 849-50 (¶17) (citation omitted).

¶22. As previously discussed, we find the record contains sufficient evidence to show that Barton entered voluntary guilty pleas to Counts I and II of his indictment. In pleading guilty to Count I at the January 7, 2016 hearing, Barton conferred with his attorneys off the record. On appeal, Barton seems to assert that during this off-the-record conference, his attorneys coerced him to plead guilty. Beyond his own vague allegation, however, Barton offers no specific facts regarding his claim that his attorneys coerced or induced him to plead guilty to Count I, and the record wholly fails to support such an assertion. In addition, the circuit judge asked Barton during the plea colloquy whether he was satisfied with his attorneys' services, and Barton responded, "Yes, sir." Our caselaw has long held "that 'solemn declarations in open court carry a strong presumption of verity.'" *Wallace v. State*, 264 So. 3d 1, 4 (¶12) (Miss. Ct. App. 2018) (quoting *Baker v. State*, 358 So. 2d 401, 403 (Miss. 1978)). Because Barton cannot overcome the strong presumption that his attorneys' performance was sufficient, we find no merit to his claim that his attorneys provided ineffective assistance by coercing him to plead guilty to murder.

¶23. As to Barton's claim that his attorneys were ineffective because they entered guilty pleas to Counts II and III on his behalf, we again acknowledge the existing presumption "that an attorney's performance falls within the wide range of reasonable professional assistance . . . ." *Smith*, 275 So. 3d at 112 (¶39). While the record reflects that Barton's attorneys answered some of the circuit judge's questions as they attempted to assist their

15

client with the plea proceedings, we cannot say that such conduct fell outside the wide realm of reasonable professional assistance. Nor can we find that Barton has sufficiently proven that such assistance was ineffective or deficient. In addition, as discussed, we find that Barton voluntarily, knowingly, and intelligently entered a guilty plea to Count II at the January 14, 2016 hearing. We therefore conclude that his ineffective-assistance claim as to Counts II and III also lack merit.

### III. Recusal

¶24. In his final assignment of error, Barton asserts that Judge Christopher Collins, who presided over his PCR hearing, abused his discretion by denying Barton's motion to recuse. Judge Marcus Gordon presided over Barton's January 7, 2016 plea hearing and the January 14, 2016 resentencing hearing. In March 2016, Judge Gordon retired. Judge Collins succeeded Judge Gordon and presided over Barton's PCR hearing. After the PCR hearing, Barton moved for Judge Collins's recusal. Barton stated that he had sustained a gunshot wound during the incident that led to his indictment charges, and as a result of the injury, he had difficulty controlling his body movements. In his recusal motion, Barton claimed that at his January 7, 2016 plea hearing, Judge Collins, who was then an attorney, was present in the courtroom. Barton further claimed that he saw then-attorney Collins laugh at, mock, and imitate him as he attempted to answer Judge Gordon's questions. Barton asserted that Judge Collins's alleged conduct called into question his impartiality as to Barton's requested PCR relief. After reviewing Barton's recusal motion, Judge Collins denied the motion as meritless and frivolous.

¶25.    We review the circuit court's denial of Barton's recusal motion for manifest error.

*Kinney v. S. Miss. Planning & Dev. Dist. Inc.*, 202 So. 3d 187, 194 (¶20) (Miss. 2016).

Mississippi Code of Judicial Conduct Canon 3(E)(1) provides that "[j]udges should

disqualify themselves in proceedings in which their impartiality might be questioned by a

reasonable person knowing all the circumstances or for other grounds provided in the Code

of Judicial Conduct or otherwise as provided by law . . . ."  As the Mississippi Supreme

Court explained in *Kinney*:

> This Court presumes that a judge, sworn to administer impartial justice, is qualified and unbiased.  For a party to overcome the presumption, the party must produce evidence of a reasonable doubt about the validity of the presumption.  Reasonable doubt may be found when there is a question of whether a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality.  Said another way, the presumption is overcome only by showing beyond a reasonable doubt that the judge was biased or unqualified.

*Kinney*, 202 So. 3d at 194 (¶20) (emphasis, citations, and internal quotation marks omitted).

¶26.    Other than his own unsupported assertions, Barton provides no evidence to overcome

the presumption that the circuit judge was unbiased or acted impartially.  Because Barton has

failed to show beyond a reasonable doubt that the circuit judge should have recused himself,

we find this issue lacks merit.

**CONCLUSION**

¶27.    Although we find the record contains a sufficient factual basis for Barton's guilty

pleas to Counts I and II, the record also reveals that Barton never entered a plea to Count III

and that no factual basis was ever established for Count III.  We therefore affirm the circuit

court's denial of Barton's PCR motion as to Counts I and II, but we must reverse the circuit

17

court's judgment as to Count III and remand this case for further proceedings as to that charge.

¶28.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**