# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-01073-COA

**CUTRELL VARNADO A/K/A CUTRELL SMITH**          **APPELLANT**
**VARNADO A/K/A CUTRELL S. VARNADO**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2021 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CUTRELL VARNADO (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/06/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1. On March 29, 2016, Cutrell Varnado pled guilty to first-degree murder in the Simpson County Circuit Court for killing Neoma Durr on September 15, 2014. The circuit court sentenced Varnado to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Varnado filed a pro se motion for post-conviction relief (PCR) arguing that his plea was entered involuntarily and that he received ineffective assistance of counsel. The circuit court denied Varnado's motion, and he now appeals pro se arguing (1) that his guilty plea was not entered into voluntarily, (2) that his conviction and sentence resulted from prosecutorial misconduct, and (3) that he received ineffective

assistance of counsel. After a review of the record, we affirm Varnado's conviction and sentence.

**FACTS**

¶2. On September 5, 2014, the Simpson County Sheriff's Office (SCSO) received a call from Eisenhower Durr stating that upon arriving at his home, he observed a black male and black female running out of the front door and down a pipeline behind his residence. When he went inside his home, Durr found his wife, Neoma Durr, age sixty-four, lying on the floor "possibly" deceased. Neoma was later pronounced dead.

¶3. On September 6, 2014, a caller identifying himself as "Slim"[1] contacted the sheriff's office and suggested that they speak with Durr about his granddaughter Kiki and her boyfriend. According to Slim, Kiki and her boyfriend had come to Gulfport the day before and left Kiki's son with "a girl named Dee," who was Slim's girlfriend's cousin. Slim stated that Kiki and her boyfriend told Dee that they were going to the casino for a while and would be back later to pick up Kiki's son. Slim stated that when Kiki and her boyfriend returned to pick up the child, "they had blood splatter[ed] on their clothes[,] and Kiki acted like she was very upset." Kiki talked with Dee for a while before leaving with her son. After they left, Dee informed Slim that Kiki said she and her boyfriend did not go to the casino but instead had gone to her grandfather's home to talk to him about getting the rest of her money that was left to her by her deceased parents. Kiki told Dee that upon arriving at her grandfather's house, she and her boyfriend went into the house, but only her grandfather's

---

[1] The record does not indicate Slim's given name.

2

wife, Neoma, was home. Kiki further stated that they were trying to make Neoma tell them where the money was when they heard someone pull up outside. According to Kiki, upon hearing someone arrive, her boyfriend "freaked out," stabbed Neoma, and the two ran out the back door of the home.

## PROCEDURAL HISTORY

¶4.     On March 29, 2016, the State filed a bill of information in the Simpson County Circuit Court, which stated that on September 5, 2014, Varnado killed Neoma Durr in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014).[2] Varnado waived the right to an indictment and filed a petition to enter a plea of guilty. Along with his plea petition, Varnado also executed and signed a statement of understanding (a document that outlined how the circuit court would review his plea petition, how his plea hearing would be conducted, and explained Varnado's constitutional rights).

¶5.     In his plea petition, which both he and his attorney signed, Varnado stated that he was voluntarily pleading guilty to the crime of first-degree murder and that it was his understanding the State would recommend he receive a sentence of "life with the possibility of parole."

¶6.     The circuit court held a hearing on Varnado's plea petition that same day. During the

---

[2] In 2014, section 97-3-19(1)(a) provided:

(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

(a) When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder. . . .

3

plea hearing, the circuit court questioned Varnado about the voluntariness of his plea, his satisfaction with his attorney's services, and his understanding of his rights. The circuit court also asked Varnado a series of questions to determine whether Varnado had read and understood his plea petition and if his attorney had explained everything to him. Varnado answered in the affirmative to all questions:

> Court:   All right. The Court has your petition to enter the guilty plea and also your statement of understanding on that petition to enter a guilty plea. Did you go over those two documents with your lawyer?
>
> Varnado:   Yes, sir. Your Honor.
>
> Court:   Did your lawyer explain those two documents to you?
>
> Varnado:   Yes, Your Honor.
>
> Court:   Do you understand those two documents?
>
> Varnado:   Yes, sir, Your Honor.

¶7.   Then the circuit court asked the State to present the facts it would prove against Varnado if the matter went to trial. The State asserted that it would show through the testimony of Durr, various members of the sheriff's office, employees of the Mississippi Bureau of Investigation (MBI), and experts from the Mississippi Crime Laboratory, that on September 5, 2014, two masked individuals (a female and a male) were seen by Durr fleeing from his home, that one of those individuals was Varnado, and that Neoma was found dead inside the home. According to the State, testimony from the State Medical Examiner would also prove that Neoma's death was caused by sharp and blunt force trauma and that the manner of death was homicide. The prosecutor also stated that investigators and experts

4

would testify that Varnado's DNA was found underneath Neoma's fingernails and on the mask Varnado wore during the commission of the crime. The State also had a voluntary statement from Kiki confessing to her and Varnado's involvement in the crime, which corroborated the DNA findings and Durr's eyewitness testimony. At the conclusion of the State's presentation, the Court asked Varnado if he disagreed or had anything to add to what the State said, and he stated, "No, Your Honor."

¶8. After the court confirmed that Varnado understood the charge against him and that he was in fact guilty, the State informed the court that it was recommending a sentence of life imprisonment in accordance with Mississippi Code Annotated section 97-3-21(1) (Rev. 2014).[3] The court questioned Varnado about his understanding of his sentence:

> Court: All right. Do you understand that the sentence that is going to be imposed upon you for the commission of this crime is life imprisonment?
>
> Varnado: I do.
>
> Court: Do you understand that?
>
> Varnado: I do.

¶9. The court also interrogated Varnado about his understanding of his eligibility for parole or early release:

> Court: Now, you will not be eligible for *parole or early release* until you obtain the age of 65 years, okay? Do you understand that?
>
> Varnado: Yes, Your Honor.

---

[3] Section 97-3-21(1) provided: "Every person who shall be convicted of first-degree murder shall be sentenced by the court to imprisonment for life in the custody of the Department of Corrections."

Court:     That doesn't mean you're going to make parole at 65. That just
           means that you're going -- at that point in time you will become
           eligible. Do you understand that?

Varnado:   I do.

Court:     Knowing these things, do you still wish to plead guilty?

Varnado:   Yes, Your Honor.

¶10. When questioned about the sufficiency of his attorney's representation, Varnado stated that he was satisfied with his attorney's services and that he had not been promised anything or threatened in any manner by his attorney to plead guilty. At the end of the hearing, the circuit court found that Varnado's plea was knowingly, intelligently, and voluntarily made and that a factual basis existed for the acceptance of Varnado's guilty plea. Thus, the circuit court accepted Varnado's plea and sentenced him to serve life imprisonment.

¶11. The circuit court entered its written final judgment and sentence on the same day. The judgment stated that Varnado was "sentenced to serve a [sic] life imprisonment in accordance with MCA 97-3-21(1)." The order further stated that Varnado "was advised that he is not eligible for parole or early release from the Mississippi Department of Corrections until he attains the age of sixty-five (65) years."

¶12. On September 19, 2018, Varnado timely filed a pro se PCR motion in the circuit court. In his motion, Varnado alleged that (1) his guilty plea was involuntary because it was the product of fear and coercion, (2) his attorney had failed to defend him and impermissibly

6

informed him "that if he didn't take the plea that they would kill him,"[4] and (3) that he received ineffective assistance of counsel because his attorney allowed the prosecution to present falsified and misleading evidence to the court. Varnado further asserted that his attorney's failure to contest, evaluate, or independently investigate left him in fear for his life, and such fear led him to change his plea of not guilty to guilty.

¶13. In addition, Varnado alleged that an investigator's report falsified the condition of Neoma's body and misled the sentencing court to believe that she had received multiple lacerations and puncture wounds to her torso, thus indicating that Neoma had been tortured. Varnado attached the one-page document, an evidence recovery log, and photos of the victim and crime scene to his PCR motion. Varnado did not attach any other affidavits to his PCR motion, but it appears that Varnado's motion was verified.[5]

¶14. On July 23, 2021, the circuit court entered an order denying Varnado's PCR motion. In its order, the circuit court stated that Varnado "knowingly, intelligently, understandingly, freely, and voluntarily entered a guilty plea to the charge of first-degree murder." The circuit court further found that at the plea hearing the sentencing judge orally interrogated Varnado and found that Varnado "was thoroughly informed as to the nature and consequences of his guilty plea." The judge also noted that the record indicated that Varnado was pleased with

---

[4] We gather that Varnado is alleging that his attorney informed him that if he did not take the State's plea offer, he would be faced with the death penalty. However, pursuant to section 97-3-21(1), Varnado could not receive the death penalty.

[5] Varnado's PCR motion contained a certificate of service and verification page that he signed, which included a portion for a notary public to sign and stamp. But the page with the notary's actual signature is not in the record.

his counsel's performance and that he was not threatened or forced to enter his guilty plea.

¶15.    Varnado now appeals the circuit court's denial of his PCR motion, arguing (1) that he was misinformed about his eligibility for parole; (2) that his plea of guilty was not entered into voluntarily, (3) that his conviction and sentence resulted from prosecutorial misconduct, and (4) that he received ineffective assistance of counsel.

## STANDARD OF REVIEW

¶16.    "Unless a circuit court's decision was clearly erroneous or an abuse of its discretion, the circuit court's denial or dismissal of a PCR motion will not be reversed." *Crockett v. State*, 334 So. 3d 1232, 1237 (¶13) (Miss. Ct. App. 2022).    Where questions of law are raised, they are reviewed under the de novo standard. *Id*.    "The circuit court may summarily dismiss a PCR motion without an evidentiary hearing if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." *Kent v. State*, 269 So. 3d 401, 402 (¶2) (Miss. Ct. App. 2018).    "To succeed on appeal, the movant must: (1) make a substantial showing of the denial of a state or federal right and (2) show that the claim is procedurally alive." *Id*.

## DISCUSSION

### I.    Misinformation Concerning Early Release

¶17.    Varnado argues that his plea was involuntary because he was misinformed "that as a result of his guilty plea he would be eligible for parole consideration" and because the circuit court failed to advise him that he could withdraw his guilty plea if the court declined to accept the State's recommendation for sentencing.    However, Varnado failed to raise these

8

issues in his PCR motion before the circuit court, and he is now procedurally barred from raising these issues on appeal. This court has held that "[a] prisoner's failure to raise an issue in the circuit court operates as a waiver and renders that issue procedurally barred on appeal." *Tallant v. State*, 345 So. 3d 575, 591 (¶45) (Miss. Ct. App. 2021); *see also Haley v. State*, 864 So. 2d 1022, 1024 (¶8) (Miss. Ct. App. 2004) (appellate court will not consider or review issues not raised in the trial court). Therefore, we find that Varnado waived his right to argue these issues on appeal. Notwithstanding the waiver, we find Varnado's argument fails because the sentencing circuit court did not misinform him about his potential eligibility for release at age sixty-five.

¶18. Varnado was not eligible for parole under the parole eligibility statute in effect at the time he committed his crime. At that time, section 47-7-3(1)(g)(i) (Supp. 2014) prohibited parole for anyone convicted of a "crime of violence" listed in Mississippi Code Annotated section 97-3-2, which included first-degree murder. Even though section 47-7-3(1)(g)(i) allowed some defendants to be eligible for parole when they reached the age of sixty and had served at least ten years of this sentence, section 47-7-3(1)(g)(ii) specifically excluded inmates sentenced for a crime of violence under section 97-3-2. Accordingly, Varnado would not be eligible for parole under section 47-7-3.

¶19. However, a different parole statute dealing with earned time, section 47-5-139(1)(a) (Rev. 2015), does allow an inmate who is sixty-five and has served fifteen years of his sentence to petition the court for a conditional release:

(1) An inmate shall not be eligible for the earned time allowance if:

9

(a) The inmate was sentenced to life imprisonment; *but an inmate, except an inmate sentenced to life imprisonment for capital murder, who has reached the age of sixty-five (65) or older and who has served at least fifteen (15) years may petition the sentencing court for conditional release. . . .*

Miss. Code Ann. § 47-5-139(1)(a) (emphasis added). Under this statute, Varnado has the right in the future to petition the court for an early release when he fulfills that statute's requirements. Thus, the sentencing circuit court did not misinform him that he could potentially be eligible for release at age sixty-five.

¶20. We have specifically held that this conditional release opportunity applies to defendants convicted of or pleading guilty to first-degree murder like Varnado. In *Higginbotham v. State*, 114 So. 3d 9 (Miss. Ct. App. 2012), a defendant pled guilty in 2009 to a first-degree murder he had committed in 2007. *Id*. at 10 (¶2). In his plea petition, Higginbotham stated that he knew that if he pled guilty, his possible sentence would be life imprisonment with eligibility for parole as provided under section 47-7-3(1)(f) (Supp. 2005).[6] *Id*. at 12 (¶7). After questioning Higginbotham concerning his plea and confirming that Higginbotham understood that his sentence would be life imprisonment, the circuit court sentenced him to serve life in prison. *Id*. at 13-14 (¶14).

¶21. In 2011, Higginbotham filed a PCR motion claiming, among other things, that his attorney had erroneously advised him that if he pled guilty to murder, he would be eligible for parole after serving ten years. *Id*. at 13 (¶11). Higginbotham submitted an affidavit from his mother in which she said that Higginbotham's attorney, Wright, had told her that

---

[6] But at the time Higginbotham committed his crime, section 47-7-3(1)(f) prohibited parole eligibility for anyone convicted and sentenced under section 99-19-101.

Higginbotham would be eligible for parole after serving ten years. *Id*. at 15 (¶15). Higginbotham's uncle said the same in his affidavit, but at the PCR motion hearing the uncle testified that Wright said Higginbotham would be sixty-five before he could get out. *Id*. at (¶16). Higginbotham ultimately testified that he based his understanding of his eligibility for release on a statute he read and on his lawyer's saying that he could be released after ten years at age 65. *Id*. at 14 (¶14). The circuit court found no merit to Higginbotham's argument of erroneous advice concerning parole eligibility and found that Higginbotham's plea was voluntarily made. *Id*. at 15 (¶18). On appeal, this Court unanimously agreed with the circuit court, finding the following:

> The plea petition, the guilty-plea colloquy, and the post-trial PCR evidentiary hearing, taken together, reflect that Higginbotham's counsel correctly advised him of the life sentence, his potential for release at age sixty-five, and the correct sentencing statutory provision, section 47-7-3(1)(f). This statutory provision prohibits parole eligibility because Higginbotham pled guilty to murder and was sentenced to life imprisonment. Higginbotham, however, has the potential for release under section 47-5-139(1)(a) at age sixty-five after serving fifteen years by petitioning for early release at or after age sixty-five.

*Id.* at 15-16 (¶20).

¶22. Although Higginbotham had a hearing on his PCR motion and Varnado did not, before we would grant Varnado an evidentiary hearing to show his reliance on any alleged misinformation, we must first find that he was misinformed. For example, in *Manuel v. State*, 304 So. 3d 713, 717 (¶12) (Miss. Ct. App. 2020), we held that when Manuel pled guilty, he was misinformed about the nature of his charges and, thus, his eligibility for good time credit. We noted that the information of whether the charges Manuel pled to were violent or non-violent was critically important and if misinformation about this is not

11

corrected, a plea can be considered involuntary. *Id*. at (¶¶11-12). We noted that Manuel's allegations were not contradicted by his plea hearing transcript or plea petition. *Id*. at (¶13). During the plea hearing, there was no discussion of the fact that Manuel was pleading guilty to a crime of violence or that he would be ineligible for parole. *Id*. Because Manuel's PCR motion and the plea hearing transcript established that Manuel had been misinformed, we held that the circuit court erred by summarily dismissing it without a hearing. *Id*. at 718 (¶15).

¶23. Unlike *Manuel*, however, Varnado's allegations of misinformation are contradicted by the record. Here, the transcript of Varnado's sentencing hearing and his plea petition are sufficient for us to determine that Varnado was not misinformed concerning his eligibility for potential release at age sixty-five.[7] *Higginbotham* establishes as a matter of law that if a defendant is told that he had the potential for release at age sixty-five, and if that information is correct, the defendant is not misinformed even if the term "parole" is also used. Because the record does not support Varnado's allegations of misinformation, the circuit court did not err in denying Varnado's PCR motion without a hearing.

---

[7] The dissent asserts that Varnado was misinformed because the circuit court used the terms "parole" or "early release" instead of "conditional release" and cites *Parker v. State*, 119 So. 3d 987 (Miss. 2013), as authority. In that case the Mississippi Supreme Court noted a difference between the terms "parole" and "conditional release" when trying to decide whether Parker, who had been initially sentenced as a juvenile, had in fact been sentenced to life without parole that would entitle him to re-sentencing under *Miller v. Alabama*, 567 U.S. 460 (2012). *Id*. at 996 (¶20). Even if there is a subtle distinction between the meanings of the terms "parole" and "conditional release," in this case the choice of the terms does not affect the end result for Varnado as it did in *Parker*. Here no matter which term the circuit court used, "early release" or "conditional release," Varnado was not misinformed because the court correctly told him that he had the opportunity for possible release at age sixty-five.

## II.    Voluntariness of Varnado's Plea

¶24.    The Mississippi Supreme Court has held that "[a] plea is binding only if it is entered into voluntarily." *Hamberlin v. State*, 995 So. 2d 142, 144 (¶7) (Miss. Ct. App. 2008) (quoting *Robinson v. State*, 964 So. 2d 609, 612 (¶7) (Miss. Ct. App. 2007)). A defendant's guilty plea will be deemed involuntary "if induced by fear, violence, deception, or improper inducements." *Id*.

¶25.    Varnado claims that his plea was involuntary because it was the product of fear and coercion. Specifically, he alleges that he was "informed that if he went to trial, he would surely be found guilty and sentenced to death." However, Varnado failed to state who told him this and failed to offer any evidence to substantiate this claim.

¶26.    In one case, this court affirmed the Coahoma County Circuit Court's denial of a defendant's PCR motion, finding that the defendant had failed to offer any evidence to substantiate his claim that he was coerced or threatened to plead guilty. *Brooks v. State*, 208 So. 3d 14, 18 (¶12) (Miss. Ct. App. 2017). In that case, Brooks pled guilty to capital murder and murder and was sentenced to serve "concurrent terms of life in MDOC custody without the possibility of parole." *Id*. at 16 (¶1). Thereafter, Brooks filed a PCR motion claiming that "he received ineffective assistance of counsel when he pled guilty to capital murder because he was induced, coerced, and threatened into entering his plea." *Id*. at 17 (¶3). The circuit court denied Brooks's motion and he appealed. *Id*. On appeal, Brooks argued that "his plea was involuntary because he was coerced under the threat of the death penalty." *Id*. at 18 (¶12). This court held that there was "no evidence—apart from Brooks's own

assertions—that he was coerced into pleading guilty; rather, there [was] evidence in the record to the contrary." *Id*. We noted that based on the record, Brooks's plea petition showed that "Brooks affirmed [that] he had not been threatened, forced, intimidated, or coerced in any manner to plead guilty, and that he offered his plea of guilty freely and voluntarily and of his own accord." *Id*. Thus, we affirmed the circuit court's denial of Brooks's PCR motion.

¶27. In the present case, as in *Brooks*, the evidence in the record shows that in Varnado's plea petition and at the plea hearing Varnado affirmed that he had not been threatened, forced, intimidated, or coerced in any manner to plead guilty.

| | |
|---|---|
| Court: | Has anybody told you that the court would be lighter on you if you did plead guilty? |
| Varnado: | No, Your Honor. |
| Court: | Has anybody threatened you in any manner in order to get you to plead guilty? |
| Varnado: | No, Your Honor. |
| Court: | Are you entering this guilty plea freely and voluntarily and after talking it over with your lawyer? |
| Varnado: | Yes, Your Honor. |

¶28. "This Court is entitled to place great weight on the sworn testimony of a defendant given at a plea hearing, and a defendant faces a rather high hurdle in recanting that testimony." *Baldwin v. State*, 923 So. 2d 218, 222 (¶11) (Miss. Ct. App. 2005). We find that Varnado has failed to overcome this high hurdle and failed to present any evidence to substantiate his claim. In addition, Varnado also failed to provide any affidavits—apart from

14

his own—that would support his assertion that he was coerced by the threat of the death penalty. Accordingly, because Varnado has failed to present any evidence showing that he was threatened, forced, intimidated, or coerced in any manner to plead guilty, we find that this issue is without merit.

### III.  Ineffective Assistance of Counsel and Prosecutorial Misconduct

¶29.  Varnado also alleges that the circuit court erred in denying his PCR motion because he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant "must show that his attorney's performance was deficient and that it resulted in prejudice." *Brooks*, 208 So. 3d at 18 (¶10) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). However, once a defendant enters a guilty plea, he "waive[s] claims of ineffective assistance of counsel except as they relate to the voluntariness of the giving of the guilty plea." *Id*. Thus, "[w]hen a defendant pleads guilty, and later asserts ineffective assistance of counsel, he must demonstrate that his counsel's conduct proximately resulted in the guilty plea, and that but for counsel's errors, he would not have entered the plea." *Hickerson v. State*, 336 So. 3d 1134, 1142-43 (¶22) (Miss. Ct. App. 2022) (internal quotation marks omitted). "[C]laims of ineffective assistance of counsel must be pled with specificity, and the claim must be supported by affidavits other than [the defendant's]." *Kennedy v. State*, 287 So. 3d 258, 265 (¶22) (Miss. Ct. App. 2019).

¶30.  On appeal, Varnado alleges that his counsel was ineffective because he failed to "object to or challenge the false and misleading statements and documents submitted to the court" by the prosecution. However, our review of Varnado's plea petition, the transcript of

the plea hearing, and Varnado's sworn statements during the sentencing portion of the hearing directly contradict his assertion that he received ineffective assistance of counsel. At the end of the hearing, the following colloquy was exchanged:

Court:      Mr. Varnado, are you satisfied with the services of your lawyer?

Varnado:      I am, Your Honor.

Court:      Has he promised you anything or has he threatened you in any manner in order to get you to plead guilty?

Varnado:      No, Your Honor.

Court:      Do you believe that your lawyer has properly advised you in this plea?

Varnado:      I do, Your Honor.

Court:      Do you believe that your lawyer has properly represented you in this case?

Varnado:      I do, Your Honor.

Varnado also failed to provide any affidavits—apart from his own assertions—to substantiate his claim of ineffective assistance of counsel. This Court has held that in PCR cases, "where a party offers only his affidavit, then his ineffective-assistance claim is without merit." *Brooks*, 208 So. 3d at 18 (¶11). Thus, we find that the circuit court did not err in denying Varnado's ineffective-assistance-of-counsel claim.

¶31. Additionally, Varnado asserts that his conviction and sentence resulted from prosecutorial misconduct. He alleges that the prosecutor "presented false evidence to the court, which served to enhance [his] charge." To support his assertion, Varnado points to a one-page document that included the following description of Mrs. Durr's injuries:

"multiple lacerations and punctures to torso and extremities; blunt force wound noted to back of head."[8]  According to Varnado, this description indicated that Neoma had been tortured and caused the circuit court to enhance his charge.  However, this is the only evidence Varnado presented to support this claim and there is nothing in the record to indicate that this document or description of Neoma's injuries was ever presented to the circuit court.

¶32.  During the plea hearing, when asked what evidence it had to prove the charge against Varnado, the prosecution stated that it would prove "through the testimony of the State Medical Examiner that the cause of the victim's death was sharp and blunt force trauma and the manner of death was homicide."  There was no mention of torture, and at the conclusion of the presentation, the circuit court specifically asked Varnado whether he agreed with the evidence as the State had presented it, and Varnado stated that he did.

| | |
|---|---|
| Court: | Regarding that charge, do you disagree with anything the State said? |
| Varnado: | No, Your Honor. |
| Court: | Do you want to add anything to what the State said? |
| Varnado: | No, Your Honor. |
| Court: | Is what the State said true? |
| Varnado: | Yes, Your Honor. |

---

[8]  Varnado argues that this description indicated that Neoma had been tortured but this is merely an objective description of what was found during the investigation of the murder.  It in no way indicates that the prosecution tried to embellish the description of the victim's injuries for the purpose of influencing the judge to give Varnado a harsher sentence. In addition, Varnado was facing a life sentence regardless because he pled guilty to first-degree murder.

As previously stated, this Court places great weight on the sworn testimony of the defendant, and Varnado has failed to present any evidence contradicting his sworn testimony. Therefore, we find that Varnado's claim of prosecutorial misconduct is also without merit.

## CONCLUSION

¶33. Because Varnado failed to present sufficient evidence showing that his guilty plea was entered into involuntarily, that he was misinformed concerning his eligibility for release in the future, that his attorney's representation was ineffective, or that there was prosecutorial misconduct, we affirm the circuit court's order denying Varnado's PCR motion.

¶34. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, LAWRENCE AND SMITH, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.**

**CARLTON, P.J., DISSENTING:**

¶35. I respectfully dissent. The majority affirms the circuit court's denial of Varnado's PCR motion because Varnado failed to present sufficient evidence showing that his guilty plea was not entered into voluntarily.[9] However, my review of the record shows that Varnado was clearly misinformed about his parole eligibility. Accordingly, I would reverse and remand this matter for an evidentiary hearing on whether Varnado relied on this misinformation when he entered his guilty plea.

---

[9] The majority also finds no merit to Varnado's claim of prosecutorial misconduct. However, by entering a guilty plea, Varnado "waived any non-jurisdictional rights or complaints incidental to trial[,]" which "includes complaints of prosecutorial misconduct." *Conwill v. State*, 94 So. 3d 1173, 1177 (¶20) (Miss. Ct. App. 2011); *see also Worth v. State*, 223 So. 3d 844, 851 (¶25) (Miss. Ct. App. 2017).

¶36. The majority finds no merit to Varnado's claim that his plea was involuntary because, according to Varnado, he was misinformed "that as a result of his guilty plea he would be eligible for parole consideration" and because the circuit court allegedly failed to advise him that he could withdraw his guilty plea if the court declined to accept the State's recommendation for sentencing. As stated by the majority, Varnado failed to raise these issues in his PCR motion before the circuit court. "Questions not alleged and raised at trial and/or on direct appeal are procedurally barred and may not be litigated collaterally in a post-conviction environment." *Smith v. State*, 477 So. 2d 191, 195 (Miss. 1985). However, the supreme court has held errors affecting a clear denial of due process can be reviewed for plain error. *Id*.

¶37. In *Smith*, the defendant failed to challenge the constitutionality of his sentencing on appeal. *Id*. Instead, he filed a PCR motion seeking to correct his sentence. *Id*. The supreme court acknowledged that PCR claims "not alleged and raised . . . on direct appeal are procedurally barred[,]" but the supreme court refused to enforce the procedural bar, explaining that the facts of the case showed a clear denial of due process during sentencing. *Id*. The supreme court accordingly addressed the plain error in the defendant's sentencing order and ultimately reversed and remanded the case for re-sentencing. *Id*.

¶38. Like the supreme court in *Smith*, I am "compelled to address [the] plain error" concerning Varnado's parole eligibility and his guilty plea. *Id*. at 196. Here, the record shows that the circuit court improperly used the terms "parole or early release" instead of "conditional release." At Varnado's plea hearing, the circuit court informed him that he

19

would be eligible for parole at age sixty-five. However, Varnado was convicted of first-degree murder and therefore was not eligible to receive parole. *See* Miss. Code Ann. § 47-7-3(1)(g) (Supp. 2014). Rather, Varnado would be eligible to petition for "conditional release" upon reaching the age of sixty-five. *See* Miss. Code Ann. § 47-5-139(1)(a) (Rev. 2015). The majority finds that Varnado was not harmed by the circuit court's misuse of the terms "parole or early release" instead of "conditional release" because the information he received was correct regarding his eligibility for conditional release.

¶39. However, our supreme court has explained that while there are "some surface similarities," conditional release is different from parole "as a matter of law": "Conditional release is more akin to clemency, . . . [and] conditional release would not be determined by the sentencing authority at the time of sentencing based on age and other characteristics . . . ." *Parker v. State*, 119 So. 3d 987, 997 (¶23) (Miss. 2013) (citation omitted). Additionally, our supreme court has held that "erroneous information concerning parole and sentencing at least entitles the petitioner to an evidentiary hearing on whether he relied on the erroneous information." *Fairley v. State*, 834 So. 2d 704, 707 (¶8) (Miss. 2003).

¶40. After reviewing the record, I find that the plea-hearing transcript supports Varnado's claim that he was misinformed concerning his parole eligibility. I therefore find that Varnado is entitled to an evidentiary hearing to present evidence that he relied on this misinformation when he entered his guilty plea. *See Manuel v. State*, 304 So. 3d 713, 717 (¶9) (Miss. Ct. App. 2020) (An evidentiary "hearing is necessary if the movant presents sufficient evidence such that his allegations are not overwhelmingly belied by the plea

20

hearing transcript and related documents." (internal quotation marks omitted)).  As a result,

I would reverse and remand the matter for an evidentiary hearing.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION.**