# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-00202-COA

**JOSHUA HOLLON A/K/A JOSHUA DAVID HOLLON**                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2022 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSHUA HOLLON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ASHLEY LAUREN SULSER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/07/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A man plead guilty to two counts of sexual battery against his thirteen-year-old stepdaughter. The State recommended a sentence of 20 years in custody. At sentencing, the trial court diverted from the recommendation and imposed a higher sentence. Aggrieved, the man unsuccessfully attempted to claw back his guilty plea. He now appeals the denial of his petition for post-conviction relief. Finding no error, we affirm.

## BACKGROUND

¶2.     Joshua Hollon was indicted in Harrison County on two counts of sexual battery and two counts of lustful touching. The victim was his thirteen-year-old stepdaughter. Approximately two months later, Hollon was indicted on ten counts of sexual battery in

Hancock County for similar crimes against the stepdaughter.

¶3. Hollon plead guilty and executed plea petitions for two counts of sexual battery: one from Hancock County and one from Harrison County. In exchange, all other counts were set aside. The State recommended a sentence of 20 years in custody.

¶4. The same day Hollon filed his guilty plea petition the trial court conducted a hearing. A thorough colloquy was held during which the trial court asked Hollon whether he understood he was giving up fundamental legal rights. He then repeatedly affirmed he knew he was pleading guilty and was only doing so because he was actually guilty.

¶5. Crucially, the trial court asked the defendant, "Has anyone forced you, threatened you, coerced you or put you under any kind of duress to get you to plead guilty?" Hollon replied, "No, ma'am."

¶6. The trial court also inquired whether Hollon understood the discretion possessed by the trial court regarding sentencing: "what I want to make sure you understand, is that the decision on what sentence is imposed is the Court's decision and so long as I stay within the statutory minimum and maximum, I can impose any sentence I think is appropriate in your case." Hollon stated he understood and still wanted to plead guilty. And when asked, "Has anyone guaranteed you a specific sentence or promised you anything of value to get you to plead guilty," Hollon replied, "No, ma'am."

¶7. As Hollon was informed was a possibility, the trial court diverted from the State's recommendation. Hollon was sentenced to 40 years in custody with 10 years suspended rather than the 20 years to serve that the State recommended.

¶8.     He then filed a motion to withdraw the plea, arguing he had not "agreed to" be sentenced to the higher sentence. The motion was denied. Hollon subsequently filed a PCR petition in the Hancock County Circuit Court and another one in the neighboring Harrison County Circuit Court. Both alleged the plea was involuntary on a different basis—because Hollon thought his plea would ensure his son was placed in the care of Hollon's mother instead of foster care. Additionally, he claimed that his trial counsel was ineffective. To support this claim, Hollon alleged that his counsel failed to withdraw his plea when the trial court did not follow the State's recommendation for sentencing. The two petitions were consolidated.

¶9.     In a detailed ruling, the circuit court denied relief, holding that Hollon's plea was "voluntary and intelligent" and that "his arguments concerning the effectiveness of his plea" were without merit. The court further found that Hollon had admitted under oath to have committed the crimes of sexual battery against his stepdaughter.

¶10.     The circuit court also determined Hollon's counsel had not been ineffective, and indeed, "managed to negotiate a plea agreement resulting in multiple counts being passed to [the] file accompanied by a generous sentencing recommendation given the crimes." Likewise, even with the trial court's imposition of a higher sentence than the State recommended, it was still less than the maximum allowed by statute, so "Hollon's counsel was not ineffective." Hollon filed a timely notice of appeal, and it was assigned to us for review.

## STANDARD OF REVIEW

3

¶11. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Harvey v. State*, 373 So. 3d 593, 594 (¶3) (Miss. Ct. App. 2023) (quoting *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019)).

## DISCUSSION

¶12. Hollon's brief on appeal is short and to the point. He effectively addresses three separate points, all of which revolve around his decision to plead guilty and the trial court's imposition of a higher sentence than he expected. This includes that the trial court "changed" the State's recommendation "after Hollon signed [his] plea," that his child's custody was "being held over his head," and that his lawyer was ineffective.

### I. Hollon's guilty plea was voluntary and not the result of coercion.

¶13. Hollon claims that the circuit court erred by denying his PCR petition because his guilty plea was made involuntarily. Specifically, Hollon argues that he "had been threatened by the thought of my son being held in a foster home," claiming his attorney promised his son's release from foster care in return for pleading guilty. In his brief, he describes this alleged promise as "bribery and torture" that was inflicted on him by the State which resulted in his guilty plea. To a lesser degree, he also protests that the trial court deviated from the sentence recommended by the State.

¶14. When assessing the voluntariness of a guilty plea, "the most significant evidence of all is the thoroughness of the trial court's interrogation during the plea colloquy." *Tate v .*

4

*State*, 372 So. 3d 1054, 1057 (¶7) (Miss. Ct. App. 2023). "A guilty plea is binding and valid where it is entered voluntarily, knowingly, and intelligently" by the defendant. *Id*.

¶15. This Court has recently held that a guilty plea is made voluntarily when the petitioner has "signed his guilty-plea petition [and] verbally acknowledged to the circuit court that he had understood the petition when he signed it." *Harris v. State*, 303 So. 3d 1, 7 (¶30) (Miss. Ct. App. 2020). In that case a defendant faced a charge of statutory rape; he plead guilty and received a sentencing recommendation by the State. *Id*. at 3-4 (¶5). Like in this case, the trial court imposed a higher sentence. *Id*. at 4 (¶5).

¶16. The defendant claimed in his PCR that he was "misled regarding the terms of his plea agreement." *Id*. at 7 (¶26). In affirming, this Court held that the defendant's plea was voluntary because he was "placed . . . under oath and questioned to ascertain the voluntariness of his plea." *Id*. at (¶27). We held the plea was made voluntarily because he was "represented by counsel, signed his guilty-plea petition, and verbally acknowledged to the court that he understood the petition when he signed it." *Id*. at (¶30).

¶17. Like the defendant in *Harris*, Hollon was placed under oath and answered a series of critical questions before the trial court accepted his guilty plea. While he now claims he was coerced into pleading guilty by the State, in the trial court he repeatedly agreed that no one coerced his plea and that he wasn't forced, threatened, or coerced to plead guilty. The trial court was thorough in its questioning, and Hollon replied every time that it was his wish to plead guilty.

¶18. Hollon was under oath throughout. "[S]tatements made in open court under oath carry

5

a strong presumption of veracity." *Baker v. State*, 217 So. 3d 711, 713 (¶7) (Miss. Ct. App. 2017) (internal quotation and citation omitted). We find the circuit court was within its discretion in finding that Hollon's plea was voluntarily made and not the result of coercion.

¶19. Furthermore, to the extent Hollon claims his plea was involuntary because the trial court did not follow the State's sentencing recommendation, that cannot result in reversible error. Essentially, he claims the trial court violated the deal he made with the State where he would receive a sentence of only 20 years. He argues he considered the recommendation as some sort of binding agreement and was deceived because the sentence "changed after [Hollon] signed the petition."

¶20. Yet "as a matter of law, the decision to accept or reject a plea agreement is purely within the trial judge's discretion." *Harris*, 303 So. 3d at 6 (¶22) (internal quotation marks omitted). In that case, we pointed out that the petitioner "fails to acknowledge that the circuit court was not part of the agreement worked out between himself and the State," since "[i]n order to violate a deal, one must be a part of the deal," and the State's recommendation is just that—a recommendation. *Id*. at (¶23). "The plea deal was between [Hollon] and the State—not [Hollon] and the court." *Id*. Since "[t]he circuit court was not bound by the plea agreement," there is no error. *Id*.

¶21. And while Hollon generally attacks the circumstances of his plea, he does reference in his reply brief that he was not allowed "to overturn his plea deal," which we construe as an argument about the withdrawal of his plea. The Rules of Criminal Procedure now govern both guilty pleas and the withdrawal of a plea. Rule 15.4(a)(2)(B) provides that "[t]he

prosecuting attorney and the defendant's attorney . . . may reach an agreement that upon entry of a plea of guilty . . . the prosecuting attorney may . . . [m]ake a recommendation to the trial court for a particular sentence, with the understanding that such recommendation or request will not be binding upon the court." In contrast, a separate subsection does allow an opportunity for the defendant to withdraw a plea where "a recommendation [is made] to the trial court for a particular sentence, which the court may accept or reject." MRCrP 15.4(a)(2)(C)(ii).

¶22. We recently addressed when a circuit court is not required to give a defendant an opportunity to withdraw a guilty plea at sentencing. *Wess v. State*, 348 So. 3d 333, 343 (¶31) (Miss. Ct. App. 2022). In *Wess*, a defendant plead guilty to several felonies in exchange for a sentencing recommendation by the State. *Id.* At the plea hearing, the trial court deviated from the sentencing recommendation and imposed a higher sentence. *Id.* On appeal, the defendant argued that his sentence was "illegal" because he was not given an adequate opportunity to withdraw his plea pursuant to Mississippi Rule of Criminal Procedure 15.4. *Id.* We reasoned that "Rule 15.4(a)(2)*(B)*, *not* Rule 15.4(a)(2)*(C)*, applie[d]" because the man "entered an 'open plea,'" and "the State recommended a sentence 'with the understanding that such recommendation or request would not be binding upon the court.'" *Id.* at 345. Therefore, "the trial court was not required to give [the man] an opportunity to withdraw his plea." *Id.*

¶23. The same conclusion can be drawn in the instant case. Hollon was repeatedly informed the trial court did not have to follow the State's recommendation and was told any

7

recommendation by the State would be "non-binding" upon the trial court. The trial court thoroughly informed Hollon that it was not required to follow any recommendation and had the ultimate discretion in handing down a sentence. The court was not required to give Hollon an opportunity to withdraw his plea in this situation, and we find no error.

## II. Hollon's trial counsel was not ineffective.

¶24. Hollon also argues he received ineffective assistance of counsel because his "attorney refused to obtain statements" that would have exonerated him and did not object when he was sentenced higher than the State's recommendation.

¶25. "A claim of ineffective assistance of counsel requires proof that counsel's performance was objectively deficient and that the defendant suffered prejudice as a result." *Worth v. State*, 223 So. 3d 844, 849 (¶17) (Miss. Ct. App. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "If either prong of [the test] is not met, the claim fails." *Id.* Generally, "a voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Id.* (quoting *Thomas v. State*, 159 So. 3d 1212, 1215 (¶10) (Miss. Ct. App. 2015)). "Thus, to obtain post-conviction relief, a petitioner who pled guilty must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner would not have entered the plea." *Id.*

¶26. But to meet this standard "requires proof beyond the petitioner's own conclusory assertions." *Id.* at 849-50 (¶17). Hollon offers only "conclusory assertions" claiming his attorney's performance was deficient. He does not provide any affidavits or evidence beyond

those bare assertions. Indeed, under oath, Hollon told the trial court he was satisfied with his attorney. Accordingly, we affirm the circuit court's ruling. *See Townsend v. State*, 344 So. 3d 858, 862 (¶13) (Miss. Ct. App. 2022) (affirming the denial of PCR when the petitioner "did not support his claims of ineffective assistance of counsel with any affidavits other than his own, which does not meet the standard of our precedent").

### III. Hollon's other claims for relief fail.

¶27. Finally, Hollon references other grievances including an allegation that his rights were violated by an invalid search warrant and that he was not adequately informed of his rights prior to interrogation.

¶28. "It is well-settled that a knowing and voluntary guilty plea waives certain constitutional rights, among them the privilege against self-incrimination . . . ." *Joiner v. State*, 61 So. 3d 156, 158 (¶7) (Miss. 2011) (quoting *Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989)). Likewise, "a valid guilty plea waives the defendant's right to make certain constitutional challenges, including those under the Fourth Amendment." *Singleton v. State,* 213 So. 3d 521, 523-24 (¶5) (Miss. Ct. App. 2016) (quoting *Burns v. State*, 984 So. 2d 1024, 1025 (¶7) (Miss. Ct. App. 2016)).

¶29. By voluntarily pleading guilty, Hollon waived his right against self-incrimination, as well as any claims about an invalid search warrant pursuant to the Fourth Amendment.

### CONCLUSION

¶30. For the foregoing reasons, the circuit court's order denying Hollon post-conviction relief is **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**